Flora L. BARNETT, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 93–1098.

United States Court of Veterans Appeals.

April 13, 1995.

**2**

Michael P. Horan and Linda E. Blauhut, Washington, DC, were on the brief for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Rosalind Eager, Washington, DC, were on the brief for appellee.

Before KRAMER, FARLEY, and HOLDAWAY, Judges.

HOLDAWAY, Judge:

The appellant, Flora L. Barnett, appeals a September 13, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which found that new and material evidence had not been submitted to reopen her claim for service connection for the cause of the death of her husband, veteran Boyd Barnett. The Court affirms the Board's decision.

## I. BACKGROUND

The veteran had active service in the Navy from August 1942 to December 1944. His service medical records were negative for a respiratory disorder. During service in 1944, he developed a duodenal ulcer and was hospitalized numerous times thereafter for treatment. In January 1945, service connection was granted for malaria and duodenal ulcer, postoperative with hyperchlorhydria. Chest x-rays taken in August 1951 and March 1956 were reported as normal. The veteran reported shortness of breath during a November 1956 hospitalization, but no abnormality of his respiratory system was found. In 1958 the veteran was diagnosed with asthmatic bronchitis, but no respiratory problems were documented in records dated September 1958 to April 1960. His gall bladder was removed in December 1959, and he had a sub-total gastric resection in May 1961. A chest x-ray taken in May 1961 showed a general increase in lung markings, but there were no significant changes according to x-rays taken later in October 1961.

The veteran was hospitalized in April 1968 and diagnosed with anxiety and external precipitated depression. The regional office (RO) determined that the veteran's anxiety and his gastrointestinal disorder were interrelated, and in June 1968 awarded service connection for anxiety reaction with post gastrectomy. In November 1972 the veteran was diagnosed with chronic obstructive pulmonary disease (COPD). In 1973 he was diagnosed with diabetes mellitus, nutritional cirrhosis, and congestive heart failure. Pulmonary function studies that same year revealed a decrease in breathing capacity, although x-rays did not show evidence of active disease. From August 1978 until his death in August 1987, the veteran had a 70% dis-

ability rating for schizophrenia, formerly identified as anxiety reaction, and a noncompensable rating for malaria.

The veteran's death certificate identified the cause of death as "Respiratory Arrest Due to, or as a Consequence of Pneumonia" and listed COPD as "Other Significant Conditions." The appellant filed an application for dependency and indemnity compensation in August 1987. She submitted a copy of the death certificate and records from 1986 and 1987 which documented the veteran's treatment for chest pain, severe low back pain, COPD, tachycardia, pneumonia, and congestive heart failure. Although schizophrenia was listed as a diagnosis in the medical records, it was never discussed in the records as a factor in the veteran's physical problems.

The RO denied service connection for the cause of death in November 1987. The appellant then submitted a "Medical Certificate" from Dr. Friday who said that the veteran had been followed by him for several years for schizophrenia, COPD, and congestive heart failure. Dr. Friday stated:

In my opinion his death was hastened by his schizophrenic condition which made regulation of his diabetes and medication extremely difficult. The patient was uncooperative in taking his medication, dietary measures and general medical follow up because of his schizophrenia. In my opinion this was directly responsible for [the veteran's] final decline and demise.

The appellant did not file a Notice of Disagreement (NOD) until August 1988. In June 1989 the BVA denied service connection for the cause of death because the veteran did not have a service-connected lung disorder and because contemporaneous medical evidence did not show that his service-connected schizophrenia interfered significantly with the treatment of his longstanding respiratory problems.

In April 1990, the appellant sought to reopen her claim and submitted another letter from Dr. Friday. In the second letter, Dr. Friday gave several examples of how the veteran's schizophrenia affected his other medical conditions: he would not quit smoking; he was so depressed he would not engage in any physical activity; two years prior

to his death he had liver problems possibly caused by his psychiatric medication, his medication was discontinued by Dr. Dickinson, and his mental and physical condition deteriorated; and he would tell the doctor that he would rather have certain treatments done at VA facilities and would not follow up. In its April 1990 decision, the RO called the appellant's claim "reopened" and found that there was no basis for a change in the prior decision.

The appellant filed an NOD in June 1990. Although the appellant's veterans service organization representative acknowledged 38 C.F.R. § 3.156 (1990) which pertains to new and material evidence in his presentation to the Board, the Board nevertheless remanded the case in December 1990 for the RO to issue a Supplemental Statement of the Case (SSOC) presenting the laws on finality of decisions. The RO issued the SSOC in February 1991. In his second presentation to the BVA in September 1991, the appellant's representative again acknowledged 38 C.F.R. § 3.156. In April 1992, the BVA remanded the case for the RO to obtain treatment records from Dr. Friday, Dr. Dickinson, and the Birmingham, Alabama, VA Medical Center (VAMC).

The medical records of the veteran's last illness were secured from VAMC, as were Dr. Friday's treatment records from 1978 to 1987. Neither Dr. Friday's nor VAMC's records referred to a connection between the veteran's schizophrenia and his respiratory disorder. Records from Dr. Dickinson were obtained which showed that the veteran had unexplained liver problems which the doctor thought might be due to his psychiatric medication. The veteran underwent a liver biopsy in 1985. Although there was no pathology diagnosis, the biopsy did show "nonspecific resolving hepatocellular injury which may have been secondary to Naprosyn to a major tranquilizer secondary to congestive heart failure." Dr. Dickinson recommended that the veteran avoid the major tranquilizers.

In July 1992, the RO found that there was no evidence showing the veteran received less than adequate care throughout his life for his multiple medical problems because of

his schizophrenia. The RO did not discuss the evidence according to the new and material evidence requirements. Nevertheless, the appellant's representative argued to the BVA in January 1993 that new and material evidence had been presented. In its September 1993 decision, the Board concluded that new and material evidence had not been submitted to reopen the claim. It found that Dr. Friday's second letter was cumulative of his previous letter and showed no clinical or evidentiary basis to substantiate the doctor's opinion that the veteran's schizophrenia contributed to or hastened his demise. Dr. Dickinson's records were deemed not material because liver disease was not shown to contribute to the veteran's death.

## II. ANALYSIS

On appeal, the appellant challenges the Board's authority to change an RO determination which is favorable to the claimant. She argues that because the RO adjudicated the appellant's claim on the merits and failed to apply the new and material evidence standard, the BVA had authority only to consider the merits of the claim. She also argues that the appellant did not have notice about the new and material evidence issue and that she was prejudiced by the BVA's review of her claim under the new and material evidence standard.

■ The appellant's argument is without merit. First, Congress has mandated that a previously denied claim may not be reopened in the absence of new and material evidence. *See* 38 U.S.C. § 7104(b) ("Except as provided in section 5108 of this title, when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered."), § 5108 ("If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim."). Second, Congress has mandated that the BVA include in its decisions "a written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on *all material issues of fact and law* presented on the rec-

ord." 38 U.S.C. § 7104(d)(1) (emphasis added). Given the statutory scheme in sections 7104(b) and 5108, the new and material evidence requirement was clearly a material legal issue which the BVA had a legal duty to address, regardless of the RO's actions. If the BVA had adjudicated the claim on its merits without resolving the new and material evidence issue, its actions would have violated its statutory mandate. Similarly, once the Board found there was no new and material evidence, it was bound by an express statutory mandate not to consider the merits of the case. *See McGinnis v. Brown*, 4 Vet.App. 239, 244 (1993) (Board reopening is unlawful when new and material evidence has not been submitted).

■ Furthermore, the appellant was not prejudiced by the Board's actions. First, she had notice of the new and material evidence issue, as indicated by her representative's three statements before the BVA. In fact, her representative acknowledged the issue even before the BVA remanded the claim to the RO to issue an SSOC on the law of finality of decisions. *Cf. Curry v. Brown*, 7 Vet.App. 59, 66 (1994) (when BVA addresses a question not considered by RO, BVA must consider whether claimant had notice and whether claimant was prejudiced). Second, the Board's consideration of the new and material evidence question involves the same matter as the RO's merits determination. *See Bernard v. Brown*, 4 Vet.App. 384, 390–92 (1993).

■ The determinative issue in this case is whether the veteran's service-connected schizophrenia is a principal or contributory cause of death. 38 C.F.R. § 3.312(a) (1994). A service-connected disability is the principal cause of death when it, "singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related thereto." 38 C.F.R. § 3.312(b) (1994). A service-connected disability is a contributory cause of death if it is causally connected to the death and "contributed substantially or materially" to death, "combined to cause death," or "aided or lent assistance to the production of death." 38 C.F.R. § 3.312(c)(1) (1994).

 

 The appellant's claim for service connection for the cause of the veteran's death was originally denied by the BVA in June 1989. This decision was final and the claim could be reopened only upon presentment of new and material evidence. *See* 38 U.S.C. §§ 5108, 7104(b). Whether evidence is new and material is a question of law which this Court reviews de novo. *See Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992). " 'New' evidence is that which is not merely cumulative of other evidence of record." *Cox v. Brown*, 5 Vet.App. 95, 98 (1993). "Material" evidence is relevant to and probative of the issue at hand, and of sufficient weight and significance that there is a reasonable possibility that the new evidence, when considered in light of all the evidence, would change the outcome. *Id.; see also Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991).

Since the BVA's final decision on the merits, the appellant has submitted a letter from Dr. Friday dated April 1990, Dr. Friday's treatment records from 1978 to 1987, Dr. Dickinson's treatment records for the veteran's liver disorder, and the records from the veteran's last hospitalization at the Birmingham, Alabama, VAMC. Dr. Friday's April 1990 letter is a rehashing of his previous statement in the Medical Certificate that the veteran's schizophrenia was directly responsible for his final decline. The added details in the April 1990 letter merely support the statements made in the Medical Certificate. On the precise issue at hand, that is, the relationship between schizophrenia and respiratory disease, the letter is less precise than the Medical Certificate. The crux of both documents is Dr. Friday's opinion that the veteran's death was hastened by his schizophrenic condition because his schizophrenia made treatment of his physical ailments more difficult. Since Dr. Friday's opinion in both documents is the same, the April 1990 letter is cumulative and not new. *See Bielby v. Brown*, 7 Vet.App. 260, 264–65 (1994) (physician's second letter which restated opinion in first letter was cumulative); *Paller v. Principi*, 3 Vet.App. 535, 538 (1992).

Dr. Friday's treatment records and the records from the last VAMC hospitalization are not material because they do not demonstrate any causal relationship between the veteran's schizophrenia and the cause of his death. *See Mintz v. Brown*, 6 Vet.App. 277, 280 (1994). The VAMC records do not refer to the veteran's schizophrenia and the only reference to the veteran's mental condition in Dr. Friday's records is in 1984 when he noted that the veteran's chest pain was a "combination of chest wall and anxiety related." Dr. Dickinson's records are also not material. The records raise the possibility that the veteran's medicine for his schizophrenia was affecting his liver. However, the death certificate does not list liver disease as a contributing cause of death. Therefore, after a thorough review of the record, the Court concludes that the appellant did not submit new and material evidence sufficient to reopen her claim.

## III. CONCLUSION

The September 13, 1993, decision of the BVA is AFFIRMED.