**Lee M. MEYER, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 94–850.**

United States Court of Veterans Appeals.

Argued Aug. 15, 1996.

Decided Oct. 7, 1996.

Linda E. Blauhut, Washington, DC, with whom Michael P. Horan was on the brief, for appellant.

Rudrendu Sinhamahapatra, with whom Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; and R. Randall Campbell, Deputy Assistant General Counsel, were on the brief, for appellee.

Before NEBEKER, C.J., and HOLDAWAY and STEINBERG, JJ.

STEINBERG, Judge:

The appellant, Vietnam veteran Lee Meyer, appeals an August 3, 1994, Board of Veterans' Appeals (BVA or Board) decision denying a claim for service connection for Crohn's disease. Record (R.) at 6. Both parties have filed briefs, and the appellant has filed a reply brief. For the reasons that follow, the Court will vacate the Board decision and remand the matter.

## I. Background

The veteran served on active duty in the U.S. Army from August 1966 to May 1969, including a tour of duty in Vietnam, and in the U.S. Navy from December 1976 to June 1977. R. at 18, 20. August 1966 induction and May 1969 separation medical examination reports showed no relevant abnormalities. R. at 25–26, 30–31. Service medical records (SMRs) for that period of service did not record any complaint of or treatment for an intestinal condition or Crohn's disease. R. at 27–29, 36–57. (Crohn's disease is "a chronic granulomatous inflammatory disease of unknown etiology, involving any part of the gastrointestinal tract", DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 480 (28th ed. 1994) [hereinafter DORLAND'S].) The veteran's December 1976 induction medical examination report showed no relevant abnormalities. Supplemental (Suppl.) R. at 1–2.

January and February 1977 SMRs showed that the veteran was treated for complaints of urinary problems (including prostatitis) and low back pain. R. at 72–73, 92. An orthopedic consultation report in February 1977 noted that he reported difficulty with both urination and bowel movements, but the report did not confirm prostatitis and concluded that low back pain was due to trauma from a fall in December 1976. R. at 79–80; see R. at 83–84. A February 1977 letter from Dr. Meyer (the veteran's father), addressed "To Whom it May Concern", seemed to indicate, although it did not clearly so state, that the veteran might have Reiter's syndrome, ulcerative colitis, or Crohn's disease. R. at 68–69. (Reiter's syndrome consists of "a triad of symptoms of unknown etiology comprising urethritis, conjunctivitis, and arthritis (the dominant feature)", DORLAND'S at 1638.) The veteran was diagnosed in March 1977 with chronic low back pain (R. at 63), a recent upper respiratory infection, and "other complaints largely related to concern about his future and recent circumstances" (R. at 63, 66). The examination report noted that "[n]o other evidence of a disease process was seen". R. at 66. March 1977 outpatient records contain no diagnosis of Reiter's syndrome but noted that it should be "ruled out"—that is, that further study was needed as to the possibility of that diagnosis. R. at 64. The veteran was separated in June 1977 due to chronic low back pain. R. at 67.

Outpatient Department of Veterans Affairs (VA) records state that the veteran was diagnosed with chronic low back pain in October 1977 and August 1986. R. at 126, 132. He reported back surgery in 1986, with improvement until 1989 when he again had onset of back pain. R. at 166. In 1987, a VA regional office (RO) decision granted service connection for a herniated lumbar disc, rated 20% disabling. R. at 248. In February 1990, he complained of bloody stools. R. at 155. A sigmoidoscopy was normal, and he was advised to increase his fiber intake. R. at 157.

In June 1991, the veteran was hospitalized for evaluation of his back problem, and myelogram and computerized axial tomographic tests were normal. R. at 200. His hospital discharge summary noted that he had had no "bowel or bladder" disfunctions. R. at 199.

A September 1991 VARO decision awarded an increased disability rating of 40% for his back condition. R. at 248. A radiology report in November 1991 stated that barium x-rays of the small bowel were "strongly suggestive of regional ileitis or Crohn's disease." R. at 112. That month, the veteran filed with the RO an application for service connection for Crohn's disease, stating that he had had the disorder since service. Suppl. R. at 3. December 1991 VA medical clinic records diagnosed Crohn's disease, and noted a "long history of diarrhea—on and off". R. at 113, 190, 215. In a January 1992 letter to an RO vocational rehabilitation officer, the veteran stated that he was unable to work due to his back pain and Crohn's disease. R. at 258.

In a January 1992 statement, the veteran argued that "the [intestinal] disorder was first diagnosed [in service] as being Reiter's" but that the correct diagnosis at that time should have been Crohn's disease. R. at 262. In February 1992, the RO denied an increased rating for the back condition and service connection for Crohn's disease. R. at 264. In April 1992, the veteran submitted a Notice of Disagreement (NOD), enclosing articles on inflammatory bowel disease (R. at 298–301) and letters from two siblings and his mother (R. at 319, 321, 323). The letters stated that the veteran had been treated by his father for Crohn's disease from the time the veteran had left service until his father died in 1990. An April 1992 Statement of the Case (SOC) mentioned the medical articles but did not refer to the family letters. R. at 306–09.

In the August 3, 1994, BVA decision here on appeal, the Board concluded that the veteran had not submitted a well-grounded claim for service connection for Crohn's disease. R. at 6. The Board found as follows: (1) The veteran's SMRs showed treatment in 1977 for intestinal flu, but not for Crohn's disease or any related condition; (2) at separation from service in 1977 there was no indication of an intestinal problem; (3) the February 1977 letter from Dr. Meyer did not state that the veteran had Crohn's disease, but merely noted that his symptoms could possibly stem from Reiter's syndrome or ul-

cerative colitis, and that Crohn's disease was a related condition; (4) the October 1977 VA examination report had described the veteran's digestive system as normal; (5) Crohn's disease was not diagnosed until 1991; and (6) there was no medical evidence linking the current diagnosis of Crohn's disease to service. R. at 7–9. The Board noted that the veteran had presented statements that he had had Crohn's disease since service, but found that his statements were "inherently incredible" because they contradicted his 1977 statements, as to his medical history up to that point, that he had not had any history of stomach or intestinal trouble. R. at 7. The Board "dismissed" the claim and "vacated" the February 1992 RO decision. R. at 10.

## II. Analysis

### A. Well–Grounded Claim

■ Section 5107(a) of title 38, U.S.Code, provides in pertinent part: "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." The Court has defined a well-grounded claim as follows: "[A] plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a) ]", *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990), that the claim be "plausible" or "possible", *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993). A well-grounded claim requires a medical diagnosis of a current disability; medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and medical evidence of a nexus between an in-service injury or disease and a current disability. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table); *see also Heuer v. Brown,* 7 Vet.App. 379, 384 (1995) (citing *Grottveit, supra* ); *Brammer v. Derwinski,* 3 Vet.App. 223, 225 (1992) (absent "proof of a present disability[,] there can be no valid claim"). A Board determination whether a claim is well grounded is a conclusion of law subject to de novo review by the Court under

38 U.S.C. § 7261(a)(1). *See Robinette v. Brown*, 8 Vet.App. 69, 80 (1995); *Grivois v. Brown*, 6 Vet.App. 136, 139 (1994); *Grottveit, supra*. The truthfulness of evidence is generally presumed in determining whether a claim is well grounded. *See Robinette*, 8 Vet.App. at 75–76; *King v. Brown*, 5 Vet. App. 19, 21 (1993).

■ Although the veteran asserts that his Crohn's disease was misdiagnosed in service as Reiter's syndrome, his SMRs do not show any diagnosis of Crohn's disease, ulcerative colitis, or Reiter's syndrome. The earliest notation as to Reiter's syndrome, that it should be "rule[d] out", is in March 1977, apparently after the Army had received the February 1977 letter from Dr. Meyer, noting possible Reiter's syndrome. The letter from Dr. Meyer did not diagnose Crohn's disease, but merely stated that the veteran could have had Reiter's syndrome or ulcerative colitis, and that Crohn's disease is a related syndrome.

The veteran has submitted letters (R. at 319–23) from his mother and two siblings that his father had treated him for Crohn's disease from the time he left service until his father's death. However, lay evidence cannot fulfill the requirement for medical evidence linking a current condition to service. *See Caluza* and *Grottveit*, both *supra*. Even if those letters are read as the equivalent of stating that Dr. Meyer had told them that he was treating the veteran for Crohn's disease at the time of his discharge from service, the letters do not constitute the requisite medical evidence of a diagnosis of Crohn's disease or of a nexus to service because "the connection between what a physician said and the layman's account of what he purportedly said, filtered as it was through a layman's sensibilities, is simply too attenuated and inherently unreliable to constitute 'medical' evidence." *Robinette*, 8 Vet.App. at 77; *see also Graves v. Brown*, 8 Vet.App. 522, 524 (1996). Accordingly, upon de novo review, the Court holds that the BVA did not err in concluding that the veteran had not submitted a well-grounded claim for service connection for Crohn's disease.

**B.  Secretary's 38 U.S.C. § 5103(a) Duty**

■ Although the veteran did not clearly state to the RO or BVA that his father had told him that his Crohn's disease was related to service, he did submit statements from his mother and siblings, who asserted that Dr. Meyer had treated the veteran from 1977 until the doctor's death in 1991. The appellant asserts that the Secretary thus had a duty under 38 U.S.C. § 5103(a) to inform him of what evidence he would need to submit to complete his application. Brief (Br.) at 7. Specifically, the appellant argues that the family letters put VA on notice that relevant, competent medical evidence might exist in the form of treatment records kept by Dr. Meyer or others, and that VA should have advised the claimant to obtain and submit any such records or other corroborative evidence. Br. at 8.

In *Robinette*, the Court held that where a claimant had not submitted a well-grounded claim and "the Secretary was on notice that relevant evidence may have existed, or could have been obtained, that, if true, would have made the claim 'plausible' and that such evidence had not been submitted with the application", then that application was "incomplete" and the Secretary had an obligation under 38 U.S.C. § 5103(a) to notify the claimant of the evidence necessary to complete it. *Robinette*, 8 Vet.App. at 80. The indication of the existence of missing relevant evidence in *Robinette* was the claimant's statement that his doctor "feels that" his diabetes had begun during service. *Id.* at 73. In *Graves*, the Court ruled that section 5103(a) required a remand where an appellant had stated that "Dr. Ha Dinh, who is the Staff Cardiologist at the V.A. medical center in Little Rock, Arkansas .... has also reviewed my military records, release from active duty, and finds continuity with my present condition." *Graves*, 8 Vet.App. at 523–24. The Court explained that, although new and material evidence had not been submitted to reopen the prior disallowance of the claim, "the application was incomplete because it was missing evidence that might constitute new and material evidence to reopen" the prior disallowance, "evidence that

[was] 'necessary to complete the application.' " *Id.* at 525.

In *Johnson (Ethel) v. Brown,* the Court held that there was no section 5103(a) duty in a case where, even if a physician's statement had been obtained and stated what the appellant said it would state, it would not provide the requisite medical nexus evidence to well ground the claim. *Johnson,* 8 Vet.App. 423, 427 (1995) (holding that if appellant had presented statement from physician to effect that veteran had had heart attack "10, 20, 30 years maybe more" before 1981, such statement would not provide nexus with veteran's service from December 1942 to November 1943, because thirty years before 1981 would still be many years after veteran's separation from service and equivocal statement such as "maybe more" would not provide nexus to service).

The present case differs from *Johnson* because, if the appellant were to obtain credible medical records stating that Dr. Meyer had treated him for Crohn's disease from the time he left service until the doctor's death in 1990, such records would provide sufficient medical evidence to make the claim plausible and thus well grounded. The letters submitted by the veteran's mother and siblings stated that Dr. Meyer had treated the veteran from the time he was separated from service for Crohn's disease, and one of the letters stressed that the doctor "would tell you himself" if he were still alive. *See Robinette,* 8 Vet.App. at 75 ("Although the veteran did not use the form of a direct quotation ... but stated, rather, what his doctor 'felt', his statement is the functional equivalent of the veteran's having quoted his physician's oral or written communication and necessarily implies that the physician made such a statement"). Presuming the credibility of the letters, that is, that the doctor had, indeed, told the mother and siblings what they implied that he had, *cf. Robinette,* 8 Vet.App. at 75–76; *King, supra,* the letters are similar to the "hearsay" statements in *Robinette* and *Graves* where the appellant's account of a physician's opinion, if stated by the physician himself, would have made the claim well grounded. *See Robinette,* 8 Vet.App. at 80; *Graves, supra.*

Under the facts of this case, the Court holds that a section 5103(a) duty arose here to inform the veteran that his application was incomplete and that records, or other medical evidence, of Crohn's-disease treatment from the time the veteran left service would be needed to make the claim "plausible". The Court will thus vacate the BVA decision and remand the matter for the Secretary to comply with his section 5103(a) duty. Under section 5103(a), the application will remain open and the veteran may submit further evidence during the one-year period following the Secretary's notification to the veteran of the need for medical evidence of nexus of his disability to service.

### C. Secretary's 38 U.S.C. § 7105(d)(1)(B) Duty

█ The appellant argues that the Secretary has a duty under 38 U.S.C. § 7105(d)(1)(B), 38 C.F.R. § 19.29 (1995), and VA General Counsel opinion 16–92 (July 24, 1992) [hereinafter G.C. Prec. 16–92], to explain the law to the appellant in the SOC. Br. at 9–10. In the instant case, he asserts that the SOC should have explained the well-grounded-claim requirement, and that it is unfair for the BVA later to rely on case precedent that was not first explained in the SOC. Br. at 9.

The appellant is correct in stating that the August 3, 1994, BVA decision relied on some Court precedents issued after the date of the SOC and not mentioned in the SOC. However, the statutory and regulatory authority cited by the appellant does not establish any VA duty to notify a claimant of changes in the law that postdate the RO decision appealed to the BVA. The appellant cites 38 U.S.C. § 7105(d)(1), which provides that an SOC shall include: "A citation to pertinent laws and regulations and a discussion of how such laws and regulations affect the agency's decision." 38 U.S.C. § 7105(d)(1)(B). The "agency" referred to is the "agency of original jurisdiction"—as first referenced in 38 U.S.C. § 7105(d)(1) (and indisputably cross-referenced twice before "agency" is used in subparagraph (B))—that is, the RO.

This statutory provision clearly requires the SOC to cite the law as it pertains to the

RO decision appealed by the NOD. It does not establish any *ongoing* duty for VA to inform the appellant of any changes that might occur in the law while the case is on appeal. The February 1992 RO decision that was the subject of the April 1992 SOC did not conclude that the veteran had not submitted a well-grounded claim; therefore, 38 U.S.C. § 7105(d)(1)(B) did not require that the April 1992 SOC contain an explanation of that doctrine nor that VA supplement the SOC with an explanation of that doctrine as it would later develop through Court precedents.

The appellant also cites 38 C.F.R. § 19.29, "Statement of the Case", which provides:

The Statement of the Case must be complete enough to allow the appellant to present written and/or oral arguments before the [BVA]. It must contain:

(a) A summary of the evidence in the case relating to the issue or issues with which the appellant or representative has expressed disagreement;

(b) A summary of the applicable laws and regulations, with appropriate citations, and a discussion of how such laws and regulations affect *the determination;* and

(c) The determination of the [RO] on each issue and the reasons for each *such determination* with respect to which disagreement has been expressed.

38 C.F.R. § 19.29 (emphasis added). The provisions in this regulation, although certainly appearing to be broader than those in the statute, are quite specific in tying the VA information duty to what is in "the determination" with which disagreement has been expressed in the NOD, which is the document that triggers the obligation to present the claimant with an SOC. *See* 38 U.S.C. § 7105(d)(1); 38 C.F.R. § 19.26 (1995). As with the statute on which it is based, § 19.29 does not specify that the SOC must be updated with citations to possibly relevant Court decisions issued after the date of the SOC. Another regulation sets forth a specific requirement for a Supplemental SOC (SSOC) only when "additional pertinent evidence is received after [an SOC] or the most recent [SSOC] has been issued, when a material defect in the [SOC] or a prior [SSOC] is

discovered, or when, for any other reason, the [SOC] or a prior [SSOC] is inadequate." 38 C.F.R. § 19.31 (1995). Again, this specific regulation dealing with the SSOC does not state expressly that one must be issued with each new development in applicable law, and the Court will not read any such far-reaching requirement into it.

### D. G.C. Prec. 16–92 and Bernard *Case*

■ The appellant further argues that G.C. Prec. 16–92 requires "at a minimum a discussion of whether the claimant is prejudiced by the BVA['s] considering issues or authority not considered by the RO, yet the BVA here failed to meet that minimum requirement". Br. at 10. The appellant is correct in asserting that G.C. Prec. 16–92, which the Court addressed and generally ratified in *Bernard v. Brown,* 4 Vet.App. 384, 393–94 (1993), stated that the BVA should not make a final determination on "issues which the [RO] has never had an opportunity to address", and that the statutory and regulatory scheme "suggests that, if an issue is raised on the record for the first time before the Board, the proper course, consistent with the governing statutes and regulations, is for the Board to remand the issue to the [RO] for further development." G.C. Prec. 16–92 at comments 7, 8. However, the underlying "issue" in this case is service connection for Crohn's disease, and that was adjudicated by the RO. *See Bernard,* 4 Vet.App. at 392 (Board had jurisdiction to reach merits of service-connection claim even though RO had disallowed claim by denying reopening because of lack of new and material evidence; the " 'matter' which was the subject of the RO's decision and, consequently, over which the BVA ha[d] jurisdiction under 38 U.S.C.[ ] § 7104(a), [was] the veteran's claim of entitlement to VA benefits for [multiple sclerosis]"). Therefore, the Board was not required to remand or refer that "issue" to the RO.

The appellant correctly argues that G.C. Prec. 16–92 requires a discussion of prejudice to the appellant when considering "authority not considered by the RO." Br. at 10. Specifically, G.C. Prec. 16–92 stated:

Before considering subissues and arguments, or applying statutes, regulations, *or [Court ] analyses* which have not been considered by the [RO], BVA must first determine whether the claimant will be prejudiced by its actions.

G.C. Prec. 16–92 at comment 16 (emphasis added). In this case, the BVA found the claim not well grounded, whereas the RO had decided it on the merits. A similar issue was decided by the Court in *Barnett v. Brown,* where the RO had denied a claim on the merits and the BVA, on appeal, had determined that new and material evidence to reopen the claim had not been submitted. *Barnett,* 8 Vet.App. 1 (1995). The Court there held as follows:

[T]he appellant was not prejudiced by the Board's actions. First, she had notice of the new and material evidence issue, as indicated by her representative's three statements before the BVA. In fact, her representative acknowledged the issue even before the BVA remanded the claim to the RO to issue an SSOC on the law of finality of decisions. *Cf. Curry v. Brown,* 7 Vet.App. 59, 66 (1994) (when BVA addresses a question not considered by RO, BVA must consider whether claimant had notice and whether claimant was prejudiced). Second, the Board's consideration of the new and material evidence question involves the same matter as the RO's merits determination. *See Bernard* [, 4 Vet.App. at 390–92].

*Barnett,* 8 Vet.App. at 4. The instant case differs from *Barnett* because here neither the appellant's representative nor the appellant had indicated to the Board any familiarity with the law regarding well-grounded claims. Furthermore, the Board had not here remanded the case for the RO to issue an SSOC on the well-grounded-claim requirement, and the SOC did not mention the letters from the veteran's mother and siblings.

▆ Nevertheless, the RO's adjudication of the case on the merits could not have prejudiced the veteran before the BVA or this Court, because the requirement that a claim be well grounded is merely a threshold and its satisfaction does not, by itself, obtain anything for a claimant that he would not receive in a full adjudication on the merits. The amount of evidence sufficient to make a claim well grounded differs from the amount sufficient for an award of service connection. *See Gilbert v. Derwinski,* 1 Vet.App. 49, 54 (1990) ("when a veteran seeks benefits and the evidence is in relative equipoise, the law dictates that [the] veteran prevails"). However, when the RO proceeds to consider a claim on the merits, it is obligated to carry out a complete adjudication, including assisting the veteran in gathering evidence in support of his claim, just as though the RO had found the claim to be well grounded. *See* 38 U.S.C. §§ 7104(a), 5107(a), (b). Therefore, when an RO does not specifically address the question whether a claim is well grounded but rather, as here, proceeds to adjudication on the merits, there is no prejudice to the veteran solely from the omission of the well-grounded-claim analysis. *Cf. Edenfield v. Brown,* 8 Vet.App. 384, 390 (1995) (en banc) (holding that adjudication that claim is not well grounded is disallowance of claim, and stating that any prejudice to veteran due to merits adjudication of not-well-grounded claim would consist of possibly higher burden of presenting new and material evidence to reopen prior disallowance of claim); *Evans v. Brown,* 9 Vet.App. 273, 285 (1996) (holding that new and material evidence to reopen must be presented "since the time that the claim was finally disallowed on *any* basis, not only since the time that the claim was last disallowed on the merits" (emphasis added)). The Court thus holds that the appellant was not prejudiced by any lack of notification in the SOC as to the law regarding well-grounded claims.

### E. Reasons or Bases

The Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Simon v. Derwinski,* 2 Vet. App. 621, 622 (1992); *Masors v. Derwinski,* 2

Vet.App. 181, 188 (1992); *Gilbert,* 1 Vet.App. at 57. To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran. *See Caluza, supra; Gabrielson v. Brown,* 7 Vet.App. 36, 39–40 (1994); *Abernathy v. Principi,* 3 Vet.App. 461, 465 (1992); *Gilbert, supra.*

■ The appellant argues that the BVA's reasons or bases were inadequately set forth because the Board did not sufficiently explain why it did not accept the lay evidence. Br. at 11. The BVA stated:

The Board has considered the lay statements from the appellant's mother, brother[,] and sister that the appellant had Crohn's disease during service and was treated for it, as well as the appellant's own contentions that he was treated for Crohn's disease during service and that he has had the same symptoms since discharge from service that resulted in his recent diagnosis of Crohn's disease. However, the Court held that the appellant cannot meet his initial burden by relying on his own or his friend's opinions as to medical matters. *Grottveit* [, *supra* ]. Lay testimony is competent only when it regards the features or symptoms of an injury or illness. Furthermore, as to the allegation that the in-service question of Reiter's syndrome was really Crohn's disease, we note that the veteran and his family members (except for his father) do not have the medical expertise to establish such a medical relationship. *Espiritu v. Derwinski,* 2 Vet.App. 492 (1992). Significantly [Dr. Meyer's] February 1977 letter does not reveal findings that the veteran had Crohn's disease, it only contains a discussion of some of the characteristics of the disease.

R. at 9.

The Court cannot say that this discussion failed to "analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran".. *Caluza* and *Gabrielson,* both *supra.* It pointed out quite clearly that it did not find the lay evidence persuasive on the issue of medical causation, and why it did not, as it could not, do so under applicable caselaw.

### F. BVA Dismissal of Appeal

The appellant argues that even if the BVA were correct in finding the claim not well grounded, it erred in dismissing the appeal and vacating the RO decision, because 38 U.S.C. § 7105(d)(5) allows the BVA to dismiss a case only when it fails to allege specific error of fact or law. Br. at 12. However, the statutory provision is clearly permissive, not mandatory. It provides: "The [Board] may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed." 38 U.S.C. § 7105(d)(5).

■ In any event, as the Secretary notes, Br. at 16–17, under *Edenfield, supra* (decided while the instant case was on appeal to this Court) in a case such as this the BVA should disallow the claim rather than vacate the RO decision and dismiss the appeal, because a disallowance on the basis of a failure to submit a well-grounded claim is nonetheless a disallowance of a claim. The Secretary is correct. *See Edenfield,* 8 Vet.App. at 389 (overruling *Grottveit, supra,* which had concluded that when a claim was not well grounded it was a "nullity"). Accordingly, on remand the BVA should follow *Edenfield* if the claim is again found not to be well grounded after compliance with section 5103(a).

### G. 38 C.F.R. § 19.9

■ The appellant asserts that when a claim is not well grounded, it requires "further development" and therefore must be remanded to the RO pursuant to 38 C.F.R. § 19.9. That regulation provides:

When, during the course of review, it is determined that further evidence or clarification of the evidence or correction of a procedural defect is essential for a proper appellate decision, a Section of the Board shall remand the case to the agency of

original jurisdiction, specifying the action to be undertaken.

38 C.F.R. § 19.9 (1995). The appellant's interpretation of § 19.9 as requiring remand whenever a claim is found to be not well grounded would make 38 U.S.C. § 5107(a) a nullity and would require overruling a large number of Court precedents interpreting section 5107(a) as to the requirement for a well-grounded claim and the applicability of VA's duty to assist in the development of a claim. Although the appellant's argument is creative, he has advanced no persuasive rationale as to why the Court should interpret § 19.9 to do away with the requirement for a well-grounded claim.

An alternate reading of § 19.9 is available that blends with the statutory scheme as a whole and with the Court's precedents interpreting that scheme. That reading is that the term "proper appellant decision" in § 19.9 refers to a decision that meets the statutory and regulatory requirements. Thus, a decision that a claim is not well grounded based on the evidence submitted is a perfectly "proper" decision for the Board to reach, and the Secretary is not required to seek any further development at that point in the absence of a well-grounded claim.

### III. Conclusion

On consideration of the record, the pleadings of the parties, and the oral argument, the Court vacates the August 3, 1994, BVA decision and remands the matter for further proceedings in accordance with 38 U.S.C. § 5103(a) and other applicable law and regulation and consistent with this opinion and *Robinette, supra.* After the section 5103(a) process is complete, the claim will be expeditiously readjudicated, on the basis of all applicable law and regulation, and a readjudicated decision supported by an adequate statement of reasons or bases issued, *see* 38 U.S.C. §§ 5103, 5107(a), (b), 7104(d)(1); *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991)—all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court).

*See Allday v. Brown,* 7 Vet.App. 517, 533–34 (1995). "On remand, the appellant will be free to submit additional evidence and argument" on the remanded claim. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). A final decision by the Board following the remand herein ordered will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

VACATED AND REMANDED.