Citation Nr: 1448546 
Decision Date: 10/31/14 Archive Date: 11/05/14

DOCKET NO. 12-08 117 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUE

Entitlement to service connection for posttraumatic stress disorder (PTSD). 


REPRESENTATION

Veteran represented by: Georgia Department of Veterans Services


ATTORNEY FOR THE BOARD

S. Nathanson, Associate Counsel 





INTRODUCTION

The Veteran had duty from September 1974 to March 1975 and service in the Reserve. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. Jurisdiction over the case was subsequently transferred to the RO in Atlanta, Georgia. 

In January 2014, the Board remanded this matter for further development of the record. All indicated development has been completed and the matter is ready to be decided on the merits. 

Additional VA treatment records and statements from the Veteran have been associated with the claims file after the most recent Supplemental Statement of the Case. The Board finds that these documents are merely cumulative of the evidence already in the claims file and therefore do not require review by the RO. 


FINDING OF FACT

PTSD is not attributable to service; there is insufficient credible supporting evidence to verify the Veteran's alleged in-service stressors. 


CONCLUSION OF LAW

PTSD was not incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 4.125 (2014). 


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

The requirements of 38 U.S.C.A. §§ 5103 and 5103A have been met. There is no issue as to providing an appropriate application form or completeness of the application. VA notified the Veteran in April 2009 of the information and evidence needed to substantiate and complete a claim, to include notice of what part of that evidence is to be provided by the claimant, what part VA will attempt to obtain, and how disability ratings and effective dates are determined. 

VA fulfilled its duty to assist the Veteran in obtaining identified and available evidence needed to substantiate a claim, and as warranted by law, affording VA examinations. The examination reports reflect that the examiners recorded the Veteran's current complaints and conducted appropriate examinations pertinent to the rating criteria. See Barr v. Nicholson, 21 Vet. App. 303 (2007); Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008).

In addition, all identified service treatment records and post-service treatment records were obtained. To the extent that the Veteran indicated that she received psychiatric treatment since 1975, the Veteran did not provide the name of the provider nor an authorization and consent to release information form for VA to obtain the records. Therefore, the Board finds that there has been compliance with the duty to assist. 

The Board notes that although the Veteran indicated in her August 1995 hearing that she applied for Social Security Administration benefits, she stated that she applied for the benefits as a result of her back and blood conditions and not a psychiatric disorder. Therefore, the Board finds that there is no reasonable possibility that the records would assist the Veteran. 

The Board remanded this matter in January 2014 to provide VCAA compliant notice, associate with the claims file any outstanding treatment records, and to obtain a medical opinion. As all indicated development has been completed, to include providing the Veteran with an additional examination in March 2014, the Board finds that there was substantial compliance with the remand directives. Stegall v. West, 11 Vet. App. 268, 271 (1998).

The Board will therefore proceed to the merits of the appeal. 


Legal Principles and Analysis

The Veteran contends that she has PTSD that that is related to service. Specifically, she asserts that she has PTSD as a result of sexual assaults that occurred during her active service. The Board finds that the claim must be denied as there is insufficient credible and corroborating evidence to verify the Veteran's claimed stressors. 

As an initial matter, the Veteran does not claim, and the evidence does not reflect, that PTSD resulted from combat with the enemy. Therefore, the combat provisions of 38 U.S.C.A. § 1154 are not applicable. 

Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) in-service disease, injury, or event; and (3) a causal relationship, i.e., a nexus, between the current disability and the in-service disease, injury or event. Fagan v. Shinseki, 573 F.3d 1282, 1287 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a). Consistent with this framework, service connection is warranted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

There are also particular requirements for establishing PTSD in 38 C.F.R. § 3.304(f) that are separate from those for establishing service connection generally. Arzio v. Shinseki, 602 F.3d 1343, 1347 (Fed. Cir. 2010). Service connection for PTSD requires medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a) (requiring PTSD diagnoses to conform to the DSM-IV); a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. §§ 3.304(f). 

There are also special considerations for PTSD claims predicated on a personal assault. The pertinent regulation, 38 C.F.R. § 3.304(f)(5), provides that PTSD based on a personal assault in service permits evidence from sources other than a veteran's service records which may corroborate his or her account of the stressor incident. Examples of such evidence include, but are not limited to: records from law enforcement authorities, rape crisis centers, mental health counseling centers, hospitals, or physicians; pregnancy tests or tests for sexually transmitted diseases; and statements from family members, roommates, fellow service members, or clergy. 38 C.F.R. § 3.304(f)(5). The VA Adjudication Manual Rewrite (M21-1MR) also identifies alternative sources for developing evidence of personal assault, including private medical records, civilian police reports, reports from crisis intervention centers, testimonial statements from confidants such as family members, roommates, fellow service members, or clergy, and personal diaries or journals. M21-1MR, Part IV, Subpart ii, 1.D.17.g.

Evidence of behavior changes following the claimed assault is one type of relevant evidence that may be found in these sources. Examples of behavior changes that may constitute credible evidence of the stressor include, but are not limited to: a request for a transfer to another military duty assignment; deterioration in work performance, substance abuse, episodes of depression, panic attacks, or anxiety without an identifiable cause; or unexplained economic or social behavior changes. 38 C.F.R. § 3.304(f)(5).

Here, the March 2014 VA examination report contains a diagnosis of PTSD based on her claimed in-service stressor. There is, nevertheless, a need to corroborate the claimed stressor. 

As an initial matter, the first time that the Veteran alleged that she was sexually assaulted corresponded to when she filed her March 2009 claim for benefits. Specifically, she did not mention that she was assaulted in her numerous prior claims, to include her December 1976 claim, October 1979 claim, November 1981 claim, February 1989 claim, October 1994 claim, or November 2007 claim. 

A review of her mental health treatment records from 1995 suggest that her panic attacks and anxiety were related to her chronic illness and her family situation. There were no mentions of a military sexual assault at that time. In March 1995, the Veteran revealed that she had panic attacks when she left her home because she was overwhelmed with having to take medications and fearful that she would contract a more serious illness if she went out in public. The social worker noted that the Veteran was guarded in discussing her personal history, but was able to relate issues involving her 19 year old son who she referred to as a drug addict. In April 1995, it was noted that the Veteran reported continued symptoms of panic attacks which she attributed to high levels of histamines in her system. She also denied any psycho-social problematic issues but continued to relate feelings of anxiety, fear, and being overwhelmed. She reported feelings of acceptance surrounding her son's addictive behavior and her ability to "let go." Her cognitive functioning appeared intact and no thought disorder was detected. In May 1995, it was noted that the Veteran began to experience nightmares related to the death of her parents and she was frightened by her own medication condition. At that time she denied having any acute mood swings and denied having any acute depressive symptoms. 

The Board also notes that during the August 1995 hearing, the Veteran stated that since separation from service, she earned her GED and learned how to type but completed no other training or schooling, worked for the police department for four years as a clerk, worked as a waitress, and managed an apartment building. She further testified that since November 1986 she had been unable to work in any field. 

The first notation of PTSD of record was not until July 2007 when it was noted that the Veteran had PTSD due to sexual trauma as a child. 

In a February 2009 treatment record, the doctor noted that the Veteran revealed for the first time in the previous visit that she was raped in the military and beaten by a female supervisor. The Veteran stated that she always denied military sexual trauma in the past and her way of coping had been to avoid thinking about the past trauma. 

In her April 2009 stressor statement, the Veteran indicated that, in March 1974, she was returning to the barracks one weekend evening when a man stopped and asked her for directions. She stated that she opened the door, he pulled her out of her car into a van, and then raped her. She stated that it was dark and she was not able to get a good look at him. She further stated that he threatened her and told her not to tell anyone and consequently she only told her mother, father, and her aunt and then blocked out the incident for years by willpower and the use of drugs until 2007. 

In an associated questionnaire, the Veteran reported that the incident occurred in November 1974 and that she did not file a formal report, go to the police, or go to the hospital after the attack. She stated that she was threatened by the person who raped her to not tell anyone so she did not tell anyone until she finally told her parents and her aunt. She further reported that, as a result of the incident, between her self-medication and the prescribed medication, she could not remember the facts that she needed to remember and when she tried to remember them, it caused her stress. 

In April 2009, the Veteran's husband, friend, child, and aunt provided buddy statements. The buddy statements all contained reports that the Veteran had been raped by a man when she was in the military. 

The Veteran's friend further reported that the Veteran was molested by her stepfather when she was younger and that when the Veteran told her mother about the rape, her mother did not believe her nor did she do anything to stop it. 

The Veteran's aunt also reported that the Veteran called her after she was raped in 1974 and that the Veteran had also called her mother and requested that her mother call a congressman to get her out of the military, but her mother was unable to do that. 

In a subsequent April 2009 statement by the Veteran, she indicated that the man who raped her was a solider. She said that she was ashamed and was told by other not to report the rape because of the trouble that it would cause her. 

A January 2010 treatment record contained a notation that the Veteran was "clearly a very disturbed woman [and] is completely obsessed with her own ideas and justifies these with her own interpretation of American Indian tradition." 

On VA examination in January 2012, the examiner determined that the Veteran did not meet the criteria for a diagnosis of PTSD, but instead rendered a diagnosis of depressive disorder and an Axis II personality disorder. The examiner remarked that the Veteran referred to herself as having other people living in her body, she was a poor historian, and was vague regarding most issues in her life. The examiner further explained that gaining accuracy of true events and factual history was not possible by the Veteran's reports alone. 

In a statement, the Veteran indicated that during the VA examination she was in a terrible emotional state because she had been attacked the night before. She also indicated that she developed an alternate personality named Sawe who would attack men and only Sawe knew the details of the rape because Sawe carried the memories of hate and anger. 

The Board remanded this matter in January 2014 in order to obtain a new VA examination and medical opinion. The examiner was explicitly advised to presume that the Veteran was credible as to the alleged sexual military trauma. 

On VA examination in March 2014, the Veteran reported that she had been seeking psychiatric treatment fairly consistently since 1975. She further reported that when she was 13 her stepfather attempted to molest her. She stated that, when she was age 15, she attempted to shoot him, but she missed and grazed her sister. 

She described herself as a civil rights journalist and quantum metaphysicist and stated that she went to college in business economics, philosophy, quantum physics, and reported having an IQ of 161 and belonging to Mensa. She also reported that she was an accountant for the police department. 

The Veteran stated that she could predict death and the examiner noted that she appeared to believe in telepathy and endorsed having prophetic visions. The examiner noted that the Veteran appeared to have anthropomorphized traumatic memories in alter-egos. 

As to the claimed stressors, the examiner noted that the Veteran's alleged military sexual trauma in 1974 met the criteria for a diagnosis of PTSD and noted that the stressor was conceded by VA so that markers that substantiated the stressor were not applicable. However, the Veteran also indicated that there was an additional military sexual trauma in basic training that was a "lesbian rape involving alternate personality." The examiner noted that that military sexual trauma was "possibly delusional." The examiner also observed that the Veteran appeared to have a number of possibly delusional somatic complaints. 

The examiner ultimately opined that the Veteran appeared to meet the criteria for dissociative identity disorder that resulted from severe childhood abuse, and that the military sexual trauma appeared to have worsened the disorder beyond the expected progression. The examiner explained that the date of the event correlated to her reported year of birth, the event triggered two year drug binge, and she was diagnosed with the disorder several years later. 

The examiner also opined that she met the diagnostic criteria for PTSD which appeared to be the result of the same sexual military trauma. 

The Board finds that the Veteran's statements regarding the alleged sexual assaults are not credible and neither are the buddy statements submitted by the Veteran's friends and family. 

It is the Board's responsibility to assess the credibility and weight to be given the evidence. See Hayes v. Brown, 5 Vet. App. 60, 69-70 (1993) (citing Wood v. Derwinski, 1 Vet. App. 190, 192- 93 (1992)); see also Guerrieri v. Brown, 4 Vet. App. 467, 470- 471 (1993). The Board is obligated under 38 U.S.C.A. § 7104(d) to analyze the credibility and probative value of all evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide reasons for its rejection of any material evidence favorable to the Veteran. See, e.g., Eddy v. Brown, 9 Vet. App. 52 (1996); Meyer v. Brown, 9 Vet. App. 425 (1996); Gabrielson v. Brown, 7 Vet. App. 36 (1994).

Here, while the Veteran is competent to provide evidence of that which she experiences, see Layno v. Brown, 6 Vet. App. 465 (1994), in determining whether statements submitted by a veteran are credible, the Board may consider internal consistency, facial plausibility, consistency with other evidence, and statements made during treatment. Caluza v. Brown, 7 Vet. App. 498 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996). 

As demonstrated above, the Veteran did not allege the claimed stressor until 2009 even though she mentioned her childhood sexual assault as of 2007. The Board may draw a reasonable inference from the lack of notation of a condition in a medical report if the report would be expected to contain such information. Horn v. Shinseki, 25 Vet. App. 231, 239 n. 7 (2012); Buczynski v. Shinseki, 24 Vet. App. 221, 224 (2011) (suggesting that the Board may consider failure of a fact to be recorded in a medical record to be substantive negative evidence where the missing fact would ordinarily be recorded). 

The Veteran's reports of the assault are also not consistent throughout the record. At times the Veteran indicated that she was assaulted by a man when it was dark and she could not see who the person was, at times she indicated that she was assaulted and beaten by a female supervisor, and at times she indicated that she was sexually assaulted twice during service, once was by a woman during basic training and once was by a man during service. 

Of note, the January 2012 VA examiner opined that gaining accuracy of true events and factual history was not possible by the Veteran's reports alone and the March 2014 VA examiner opined that the Veteran's allegation of the assault by a female was possibly delusional. Although the March 2014 VA examiner did opine that the PTSD was due to the sexual military assault from November 1974, the examiner was explicitly requested to assume that the Veteran was sexually assaulted and therefore the opinion is not probative as to the credibility of the in-service stressor. 

The Board acknowledges that the Veteran endorsed drug use and indicated that she sought psychiatric treatment starting in 1975. The Board is also aware that credible buddy statements and changes in behavior, such as engaging in substance abuse or seeking psychiatric treatment, could be sufficient to corroborate the Veteran's in-service stressor. 38 C.F.R. § 3.304(f)(5). 

However, in this case, to the extent that the Veteran actually began abusing drugs in 1975 and began seeking psychiatric treatment at that time, in light of the Veteran's history of childhood sexual abuse and an Axis II personality disorder, the Board does not find her drug use and seeking psychiatric treatment sufficient to corroborate her in-service stressor. 

As to the buddy statement submitted by the Veteran's aunt, the Board also finds that it is not sufficient to corroborate the Veteran's alleged in-service stressor, because it is inconsistent with the evidence of record. Specifically, the Veteran's aunt stated that the Veteran requested that the Veteran's mother contact a congressman about the assault and help the Veteran get out of the military. The Veteran, on the other hand, stated on multiple occasions that she did not file a formal report and only told her mother, father, and aunt out of fear. She made no indication that she asked her mother to contact a congressman or try to get her out of the military. In fact, in her October 2009 Notice of Disagreement, the Veteran stated that she did not request a new duty assignment because she knew that she only had three more months left on the barracks before she was able to return home. 

The Board therefore finds that that the Veteran is not credible in her description of the in-service incidents recounted above and neither are the buddy statements provided by the Veteran's family members and friend. The Board is aware that under the relaxed standard for corroborating PTSD, it is not necessary to establish that the alleged assault be documented in the Veteran's service personnel records and lay statements and changes in behavior can be sufficient; however, in this case, as the Board finds that the lay statements are not credible, the claim must be denied. 

The Board accepts that a doctors diagnosis of PTSD due to personal assault, if competent and credible, may serve as corroboration of the stress. Menegassi v. Shinseki, 638 F.3d 1379 (2011). However, here, as in Menegassi, the alleged stressor is not credible.

As to the other diagnoses in the record of other acquired psychiatric disorders, such as depression and anxiety, the January 2014 VA examiner determined that all of the Veteran's symptoms were attributed to either PTSD or dissociative identity disorder. Accordingly, the Board finds that the Veteran does not have a current disability manifested by an acquired psychiatric disorder other than PTSD. 

In regard to the dissociative identity disorder (multiple personality disorder), a personality disorder is not considered a "disease or injury" under the applicable legislation. See 38 C.F.R. § 3.303. The Board notes that with respect to a personality disorder, service connection may be granted for disability due to a superimposed disease or injury. See VAOPGCPREC 82-90, 55 Fed. Reg. 45,711 (1990); Carpenter v. Brown, 8 Vet. App. 240, 245 (1995); Monroe v. Brown, 4 Vet. App. 513, 514-15 (1993). In this case, the credible evidence does not reflect any superimposed pathology (disease or injury) during the Veteran's service. 

In reaching these conclusions, the Board has considered the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable in the instant appeal. 38 U.S.C.A § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).


ORDER

Service connection for PTSD is denied. 



____________________________________________
H. N. SCHWARTZ
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs