Citation Nr: 1212948 
Decision Date: 04/10/12 Archive Date: 04/19/12

DOCKET NO. 09-19 991 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Honolulu, Hawaii


THE ISSUES

1. Whether new and material evidence has been received to reopen a claim of entitlement to service connection for nasopharyngeal cancer, to include as secondary to exposure to herbicide agents, and if so, whether service connection is warranted. 

2. Entitlement to service connection for a bilateral eye condition, a dental condition, and dry mouth, all claimed as a residual of nasopharyngeal cancer. 

3. Entitlement to service connection for a skin disability, to include rash and other nonspecific eruption, contact dermatitis, dermatophathic lymphadenopathy, pailosquamous eruption, persistent itch, claimed as rash on face, arms, stomach, and legs, to include as secondary to exposure to herbicide agents. 


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

M. Tenner, Counsel


INTRODUCTION

The Veteran served on active duty from July 1953 to June 1955 and from August 1955 to November 1973. He served in the Republic of Vietnam from February 1968 to February 1969. 

This case comes before the Board of Veterans' Appeals (Board) on appeal from a June 2008 decision rendered by the Cleveland Ohio Regional Office (RO) of the Department of Veterans Affairs (VA) on behalf of the Honolulu, Hawaii RO. 

In September 2011, the Board requested an expert medical opinion from a physician with the Veterans Health Administration (VHA). The Veteran was provided a copy of that opinion. See 38 C.F.R. § 20.903. In January 2012, he submitted additional evidence accompanied by a waiver of initial RO review of such. 

Finally, in its April 2009 statement of the case and in subsequent supplemental statements of the case, it appears that the RO has found that new and material evidence has been received sufficient to reopen the claim for entitlement to service connection for nasopharyngeal cancer. Even though the RO reopened the claim, the Board is required to consider whether the appellant has submitted new and material evidence to reopen the claim before considering the claim on the merits. 38 U.S.C.A. § 7104(b); Barnett v. Brown, 8 Vet. App. 1 (1995). Such consideration is set forth in the decision below. 

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2011). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACT

1. In a final October 2000 decision, the RO denied reopening the claim of service connection for nasopharyngeal cancer. Evidence submitted since that decision is new and material and relates to an unestablished fact necessary to substantiate the claim. 

2. Nasopharyngeal cancer is not a disease presumed to be caused by exposure to herbicides used in the Republic of Vietnam, including Agent Orange.

3. Nasopharyngeal cancer was not present during service or manifested to a compensable degree within one year after discharge from active duty; it was first diagnosed in 1986, more than 15 years after service discharge; and the preponderance of the evidence is against finding that it is related to service. 

4. In the absence of a finding a service connection for nasopharyngeal cancer, secondary claims of a left or bilateral eye condition, a dental condition, and dry mouth are without legal merit. 

5. The preponderance of the evidence is against a finding that a current skin disorder is related to active military service, to include his presumed exposure in service to herbicide agents. 


CONCLUSIONS OF LAW

1. New and material has been presented to reopen the claim of entitlement to service connection for nasopharyngeal cancer. 38 U.S.C.A. §§ 5108, 7105 (West 2002); 38 C.F.R. § 3.156(a) (2011).

2. Nasopharyngeal cancer was not incurred in or aggravated by service, nor is it presumed to have been incurred as a result of service. 38 U.S.C.A. §§ 1101, 1110, 1116, 1131, 5103, 5103A, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2011). 

3. The criteria for service connection for bilateral eye condition, a dental condition, and dry mouth, all claimed as a residual of nasopharyngeal cancer have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107(b) (West 2002); 38 C.F.R. § 3.303, 3.307, 3.309 (2011). 

4. The criteria for service connection for a skin condition to include rash and other nonspecific eruption, contact dermatitis, dermatophathic lymphadenopathy, pailosquamous eruption, persistent itch, claimed as rash on face, arms, stomach, and legs, have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107(b) (West 2002); 38 C.F.R. § 3.303, 3.307, 3.309 (2011). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. The Veterans Claims Assistance Act of 2000 (the VCAA)

With respect to the Veteran's claims decided herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2011).

Under the VCAA, when VA receives a complete or substantially complete application for benefits, it is required to notify the claimant and his representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claims. See 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b) (2011); Quartuccio v. Principi, 16 Vet. App. 183 (2002). In Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II), the Court clarified that VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claims; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 

Here, the appellant was provided general notice concerning the criteria for service connection and for increased rating claims in an August 2007 letter. Moreover, the letter advised him of the criteria to reopen claims based on the submission of new and material evidence. He was also advised, generally, of the basis of the prior denials. See Kent v. Nicholson, 20 Vet. App. 1 (2006) (law requires VA to look at the bases for the denial in the prior decision and to respond with notice that describes what evidence would be necessary to substantiate the element or elements required to establish service connection that were found insufficient in the previous denial). 

The Board also concludes VA's duty to assist has been satisfied. The RO has obtained service treatment records and identified VA and private outpatient treatment records. 

The duty to assist includes, when appropriate, the duty to conduct a thorough and contemporaneous examination of the Veteran. See Green v. Derwinski, 1 Vet. App. 121 (1991). In addition, where the evidence of record does not reflect the current state of the Veteran's disability, a VA examination must be conducted. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991); 38 C.F.R. § 3.327(a) (2011). Here, the Veteran underwent a VA examination in April 2011. The examination is inadequate because the examiner was unable to provide an opinion as to etiology of the nasopharyngeal cancer. Fortunately, the VHA examiner was able to provide an opinion as to the etiology of the cancer. The opinion, as discussed below, contained a reasoned analysis, and is considered adequate for decisional purposes. 
In addition, the Veteran has not been afforded a VA examination in connection with the claim for a skin disability. However, as discussed herein, the evidence does not reveal a chronic skin disability in service, probative evidence of continuity of symptomatology, or an indication of an etiological relationship between a current skin disability and the Veteran's active service. Hence, no examination is required. 

Finally, the Board, herein, reopens and considers the claim for service connection for nasopharyngeal cancer on the merits. There is no prejudice to the Veteran in considering the claim on the merits as the RO has done so as well. As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case with respect to the issues addressed herein, the Board finds that any such failure is harmless. See Mayfield, supra.

II. Nasopharyngeal Cancer

A. Application to Reopen

In May 1990, the Veteran filed a claim seeking service connection for pharynx/nasal cancer diagnosed in 1985 and claimed as secondary to Agent Orange exposure during active military service. He underwent a VA examination in July 1993 and reported that he had nose bleeds during service but did not report them. The examiner indicated that nasopharyngeal cancer was diagnosed in 1986 and that the Veteran "probably [had] early findings while on active duty with history of nose bleeds." In April 1994, the RO denied the claim, finding no evidence of cancer during service, within any applicable presumptive period, or as due to exposure to herbicide agents, such as Agent Orange. 

In January 1996 and later in December 1998, the RO denied reopening the claim. Among the pertinent evidence received were 1986 biopsy results, which revealed that the location of the tumor was on the posterosuperior wall of the nasopharynx and characterized as an invasive, moderately differentiated keratinizing squamous cell carcinoma. 

In October 2000, the RO again denied the claim. The Veteran filed a notice of disagreement with that determination, and during the course of the appeal submitted a January 2002 letter from Dr. J. B., a Colonel in the U.S. Army Medical Corps, and Chief of Hematology-Oncology Service at Tripler Army Medical Center. Therein, the physician acknowledges that the Veteran was initially diagnosed with nasopharyngeal carcinoma in 1986. He notes that the Veteran was exposed to Agent Orange while serving in Vietnam and that the carcinoma was an "epithelial upper aero digestive tract cancer with histological/embryologic similarities to lung, larynx, bronchus and tracheal cancers." Since VA had recognized the later cancers as being presumptively due to exposure to herbicide agents, the physician opined that the nasopharyngeal cancer was also likely associated with herbicide exposure. 

The Veteran also submitted a November 2001 letter from Dr. R. G., a medical oncologist. The physician noted that the Veteran presented to him several documents relating the possible cause of his nasopharyngeal cancer to exposure to dioxin in 1968. The physician stated his belief that "there is justification in the case of the [Veteran's] request for reconsideration." 

He also submitted an extract of a 1990 report from Retired Admiral Zumwalt, Jr. to the Secretary of VA which includes the Admirals recommendation that nasal/pharyngeal/esophageal cancers be presumptively associated with exposure to herbicide agents. 

Although the Veteran filed a Substantive Appeal of the RO's determination, in July 2006, the Veteran withdrew his claim for service connection for nasopharyngeal cancer. In November 2006, the Board dismissed the claim. 

Unless the Chairman orders reconsideration, or one of the other exceptions to finality applies, all Board decisions are final on the date stamped on the face of the decision and are not subject to revision on the same factual basis. See 38 U.S.C.A. § 7104; 38 C.F.R. § 20.1100. 

Although a decision is final, a claim will be reopened if new and material evidence is presented. 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156. New and material evidence can be neither cumulative, nor redundant, of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. "New" evidence means existing evidence not previously submitted to VA. "Material" evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an un-established fact necessary to substantiate the claim. See 38 C.F.R. § 3.156(a). The determination of whether newly submitted evidence raises a reasonable possibility of substantiating the claim should be considered a component of the question of what is new and material evidence, rather than a separate determination to be made after VA has found that evidence is new and material. See Shade v. Shinseki, 24 Vet. App. 110 (2010). Moreover, in determining whether evidence is new and material, the credibility of the evidence is presumed. Justus v. Principi, 3 Vet. App. 510, 513 (1992). 

The current claim was initiated in March 2007. 

Evidence received since the November 2006 Board decision includes additional statements from Dr. J. B., various Board decisions addressing claims based on herbicide exposure, copies of Admiral Zumwalt's report to the VA Secretary, VA and private outpatient treatment records, and the 2011 VHA opinion. Significantly, among the evidence is a January 2012 statement from Dr. J. B. Therein, the physician reiterates his belief that nasopharyngeal carcinoma was similar to cancers in which VA had established an association with herbicide exposure. He notes that due to the rarity of the disease, additional epidemiological studies may not be forthcoming. Finally, he states that the Veteran should receive disability compensation for nasopharyngeal cancer and its residuals. 

The Board finds that the evidence received since the last final denial is both new and material and the requirements to reopen the claim have been met. In short, among the unestablished facts at the time of the prior denial competent evidence establishing a likely relationship between the Veteran's nasopharyngeal cancer and his exposure to herbicides. The evidence submitted by Dr. J. B. addresses the etiological relationship, and, as such, the claim must be reopened and reviewed on the merits. 

B. Merits Determination

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Hickson v. West, 12 Vet. App. 247, 253 (1999); Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table). The second and third elements may be established by showing continuity of symptomatology. Continuity of symptomatology may be shown by demonstrating "(1) that a condition was 'noted' during service or any applicable presumption period; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology." Barr v. Nicholson, 21 Vet. App. 303, 307 (2007); see also Davidson, 581 F.3d at 1316; Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (holding that "[w]hether lay evidence is competent and sufficient in a particular case is a factual issue to be addressed by the Board"). 

As to presumptive service connection, some chronic diseases, such as malignant tumors, are presumed to have been incurred in service, although not otherwise established as such, if manifested to a degree of ten percent or more within one year of the date of separation from active duty. 38 U.S.C.A. §§ 1101(3), 1112(a)(1), 1113, 1137; 38 C.F.R. §§ 3.307(a)(3), 3.309(a).

In addition, and also as to presumptive service connection, certain diseases associated with exposure to certain herbicide agents used in support of military operations in the Republic of Vietnam (Vietnam) during the Vietnam era will be considered to have been incurred in service. 38 U.S.C.A. § 1116(a)(1); 38 C.F.R. § 3.307(a)(6). The presumption requires exposure to an herbicide agent and manifestation of the disease to a degree of 10 percent or more within the time period specified for each disease. 38 C.F.R. § 3.307(a)(6)(ii). Respiratory cancers, such as cancers of the lung, bronchus, larynx, or trachea, are listed as diseases that have been associated with Agent Orange exposure. Nasopharyngeal carcinoma is not, however, listed as a disease associated with herbicide exposure for purposes of the presumption. See 38 U.S.C.A. § 1116(a)(2); 38 C.F.R. § 3.309(e).

Here, the Veteran contends that nasopharyngeal cancer and its residuals are due to exposure to herbicide agents in Vietnam. In addition, he argues that nasopharyngeal cancer was first manifested in service based upon findings of an inflamed pharynx in March 1958, sore throat in May 1962, injected pharynx in January 1973 and erythematous pharynx in March 1973. 

After having carefully reviewed the evidence of record, the Board finds that the preponderance of the evidence is against the grant of entitlement to service connection. First, with regard to the question of entitlement to service connection on a presumptive basis due to herbicide exposure, nasopharyngeal cancer is not included on the list of diseases associated with herbicide exposure for purposes of the presumption. 38 U.S.C.A. § 1116(a)(2); 38 C.F.R. § 3.309(e). Thus, the automatic presumption of service connection afforded for certain specific diseases associated with exposure to herbicides, specifically Agent Orange, is not for application. 

The Board acknowledges the statements of Drs. J. B. and R. G. and of Retired Admiral Zumwalt of their belief that nasopharyngeal cancer should be associated with exposure to herbicide agents. 

These statements, alone, however, do not place the Veteran in the category of having a presumptive respiratory cancer. VA specifically laid out which respiratory cancers were associated with Agent Orange exposure. It did not include cancer of the nasopharynx in that list. That omission was intentional. See 75 Fed.Reg. 81332 -3 (December 27, 2010). 

The Board has considered the statement that the Veteran's cancer is similar in nature to cancers in which VA had established an association with herbicide exposure. The Board also acknowledges the fact that the Veteran cancer is relatively rare. VA, however, has limited the respiratory cancers to those areas that it specifically listed under 38 C.F.R. § 3.309(e).

In determining whether nasopharyngeal cancer is otherwise due to exposure to herbicides, the Board finds it significant that Drs. J. B. and R. G. did not cite to any epidemiological evidence to support their assertions. Rather, they merely tried to connect nasopharyngeal cancer to those cancers that VA had determined were presumptively the result of Agent Orange exposure. Thus, this medical opinion evidence does not provide a sufficient basis to award entitlement to service connection. Moreover, the VHA examiner did review the medical literature but found no new studies that would support a link between the Veteran's cancer and herbicide exposure. Rather, the VHA examiner reasoned that there remained no definitive relationship between nasopharyngeal cancer and dioxin exposure. In support of the opinion, the VHA examiner included a November 2011 study of head and neck tumors. That study did not include herbicide or dioxin exposure as a likely etiology or risk factor. Because the VHA examiner has provided a reasoned analysis based on review of the Veteran's claims file and review of the medical literature, it is afforded significant probative weight. 

As noted, VA has specifically determined that nasopharyngeal cancer is not associated with exposure to herbicide agent for purposes of the presumption. See Health Effects Not Associated With Exposure to Certain Herbicide Agents, 75 Fed. Reg. 32,540- 32,553 (Jun. 8, 2010); 72 Fed. Reg. 32,395 -32,407 (June 12, 2007) (emphasis added). That is, taking account of the available evidence and National Academy of Science's analysis, the Secretary has found that the credible evidence against an association between herbicide exposure and caner of the pharynx and nasal cavity outweighs the credible evidence for such an association, such that he has determined that a positive association does not exist. This determination was based on thorough and substantive medical research, and provides very strong evidence against presumptive service connection for nasopharyngeal cancer due to herbicide exposure.

The Court has noted that presumptive service connection under 38 U.S.C.A. §1116(b)(1) is warranted for a disease when a positive statistical association exists between Agent Orange exposure and the occurrence of a disease in humans. However, VA is not required to grant presumptive service connection for disabilities not on VA's presumptive Agent Orange list on the basis of the opinions of individual doctors that there is a statistical correlation between Agent Orange exposure and such disabilities. To allow the opinions of individual doctors to trump the collective view of experts on the issue of whether a statistical association with herbicide exposure exists with respect to a particular disease would be an impermissible expansion of available remedies beyond those explicitly provided by Congress. See Polovick v. Shinseki, 23 Vet. App. 48, 52-53 (2009). 

Finally, it should be noted that the various Board decisions provided by the Veteran are not dispositive of his claim. Rather, prior Board decisions have no precedential value and the Board makes its determination based on the facts presented in each case. See 38 C.F.R. § 20.1303 (2011); Lynch v. Gober, 11 Vet. App. 22, 27 (1997). 

The Board now turns to whether entitlement to service connection for nasopharyngeal carcinoma is warranted on a direct basis. Concerning direct service connection, if the claimed disease is not one of the presumptive diseases listed in 38 C.F.R. § 3.309(e), but exposure to an herbicide is presumed or proven by the evidence, as is the case here, the appellant may establish service connection by showing that the disease was incurred in service. Combee v. Brown, 34 F.3d 1039, 1043-1044 (Fed. Cir. 1994). 

The Board has reviewed the service treatment records. They are silent as to any complaints, treatment, or diagnosis of nasopharyngeal carcinoma during service. The first showing of a diagnosis of nasopharyngeal carcinoma was in 1986, which is more than 10 years following service discharge. Thus, the presumption of in-service incurrence for a chronic disease manifested to a compensable degree within one year of service (in this case malignant tumors), is not for application. 38 U.S.C.A. § 1112(a)(1) ; 38 C.F.R. § 3.307(a). 

Furthermore, post-service, there is no evidence or even a lay allegation of continuity of symptomatology of nasopharyngeal carcinoma since service discharge. 38 C.F.R. § 3.303(b). To the extent that the Veteran contends that he had nosebleeds in service and nosebleeds at the time of his cancer diagnosis in 1986, the Board finds that this lay statement is insufficient to establish a continuity of symptomatology between service discharge and the 1986 diagnosis of nasopharyngeal carcinoma, as the weight of the probative evidence is against a finding that these symptoms have any relevance to the Veteran's development of nasopharyngeal carcinoma. 

The Board acknowledges, in this regard, the July 1993 VA examiner's statement that the Veteran probably had early findings while on active duty. This opinion, however, is speculative, at best. First, even assuming that the Veteran had nosebleeds in service, the examiner does not describe the pathological relationship between nosebleeds and the development of nasopharyngeal cancer. A speculative relationship based on an unsupported analysis cannot form the basis for finding that the evidence is in equipoise, or stated another way, that reasonable doubt exists. 38 C.F.R. § 3.102(a) (reasonable doubt is a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility). 

Additionally, the VHA examiners reviewed the Veteran's service treatment records and noted that treatment in service for inflamed pharynx, sore throat, injected pharynx, erythematous pharynx, and an upper respiratory infection were all consistent with "simple illness" and "not as a precursor to NPC [nasopharyngeal cancer]." Again, because the rationale is more fully framed than the unsupported 1993 opinion, the VHA opinion is afforded significant probative weight in addressing the question of direct incurrence of nasopharyngeal cancer. 

Going back to the date that nasopharyngeal carcinoma was first diagnosed (more than 15 years after service discharge), the Federal Circuit has determined that such a lapse of time of a showing of a disease or injury is a factor for consideration in deciding a service connection claim. Maxson v. Gober, 230 F.3d 1330, 1332 (Fed. Cir. 2000).

As such, the clear weight of the evidence is against the claim on a direct basis as well. 

The Board reiterates that the National Academy of Sciences and VA found that the credible evidence against an association between herbicide exposure and cancers of the pharynx and nasal cavity outweigh the credible evidence for such an association, such that it was concluded that a positive association does not exist.

In sum, the preponderance of the evidence is against entitlement to service connection on either a direct basis or on a presumptive basis, to include as due to exposure to herbicide agents.

With regard to lay evidence, in certain instances lay evidence from the Veteran can establish a nexus between a current disability and an in-service disease or injury. See Davidson v. Shinseki, 581 F.3d 1313, 1315-16 (Fed. Cir. 2009). This case, however, is not one of those instances. Although the Veteran is certainly competent to report observations of medical symptoms, he is not competent to render a medical opinion addressing the etiology of his nasopharyngeal carcinoma without evidence showing that he has medical training or expertise. See 38 C.F.R. § 3.159(a)(1), (2); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

As the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for nasopharyngeal cancer, to include as secondary to herbicide exposure, the benefit of the doubt rule does not apply and the claim must be denied. 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

III. Secondary Service Connection Issues

The Veteran also seeks service connection for several condition claimed as secondary to nasopharyngeal cancer including a bilateral eye condition, a dental condition, dry mouth, and a skin disability. 

In addition to the laws and regulations cited above, service connection may also be granted for disability which is proximately due to or the result of service-connected disability. 38 C.F.R. § 3.310(a) ; see Allen v. Brown, 7 Vet. App. 439 (1995) (en banc). An increase in severity of a non-service-connected disorder that is proximately due to or the result of a service-connected disability, and not due to the natural progress of the non-service-connected condition, will be service connected. Aggravation will be established by determining the baseline level of severity of the non- service-connected condition and deducting that baseline level, as well as any increase due to the natural progress of the disease, from the current level. 38 C.F.R. § 3.310(b). 

Here, however, the grant of service connection on a secondary basis is contingent upon first establishing service connection for the underlying disability. The Veteran alleges that the disabilities, listed above, are all secondary to nasopharyngeal cancer. As the Board, herein, denies the claim for nasopharyngeal cancer, secondary service connection for any associated disabilities is precluded as a matter of law. See Sabonis v. Brown, 6 Vet. App. 426 (1994) (where the law and not the evidence is dispositive the Board should deny the claim on the ground of the lack of legal merit or the lack of entitlement under the law). 

IV. Skin Disability 

In February 2007, the Veteran filed a claim seeking entitlement to service connection for a body rash on the legs, arms, face, and stomach, all claimed as secondary to exposure to Agent Orange. 

The Board has reviewed the evidence of record and considered the Veteran's contentions but finds that the preponderance of the evidence is against the claim. 

His primary contention is that a current skin condition is related to exposure to Agent Orange. Records supplied show current treatment for various skin conditions. For instance, they reveal treatment for dermatitis, eczema, and rashes to his arms and legs. They also contain sporadic references to skin conditions affecting the ear and face. The contemporaneous treatment records, however, do not reveal a skin condition that has been associated with exposure to herbicide agents, such as chloracne. 

In this respect, in addition to the laws and regulations cited above, chloracne or other acneform disease consistent with chloracne is presumptively associated with exposure to herbicide agents. 38 C.F.R. § 3.309(e). Chloracne or other acneform disease consistent with chloracne shall have become manifest to a degree of 10 percent or more within a year after the last date on which the Veteran was exposed to an herbicide agent during active military, naval, or air service. 38 C.F.R. § 3.307(a)(6)(ii). 

Hence, service connection on a presumptive basis must be denied. 

To the extent that the Veteran contends that a current skin condition is directly related to service, his service treatment records do not reveal treatment for any chronic skin condition, and, upon service separation, evaluation of his skin was normal. Rather, they reveal one treatment for dermatitis to the left foot in September 1968. No follow-up treatment was required. Thus, there is an absence of a chronic skin condition in service or upon service discharge. Moreover, there is a lack of probative evidence showing continuity of symptomatology since service discharge. Finally, other than the Veteran's unsubstantiated lay assertions, there is a lack of competent medical evidence indicating an etiological relationship between a current skin condition and his active duty service. 

As regards the Veteran's lay assertions, because he has not provided evidence of continuity of symptomatology of skin symptoms since service, his belief that a current skin condition is the result of service is not afforded any significant probative weight. Rather, the findings of a normal skin examination at service discharge, the lack of evidence of a chronic disability in service, and the multi-year period after service showing no treatment for any skin conditions are factors that tend to contradict the Veteran's lay assertions. 

Considering all of the evidence of record, including the lay statements of record, however, the Board finds that the preponderance of the evidence is against the claims, and, accordingly, they must be denied. In arriving at the decision to deny the claims, the Board has considered the applicability of the "benefit-of-the-doubt" rule enunciated in 38 U.S.C.A. § 5107(b). However, as there is not an approximate balance of evidence, that rule is not applicable in this case.


ORDER

New and material evidence having been presented, the claim of entitlement to service connection for nasopharyngeal cancer is reopened, and to this extent only, the appeal is granted. 

Entitlement to service connection for nasopharyngeal cancer is denied. 

Entitlement to service connection for a bilateral eye condition, a dental condition, and dry mouth, all claimed as a residual of nasopharyngeal cancer is denied. 

Entitlement to service connection for a skin disability, to include rash and other nonspecific eruption, contact dermatitis, dermatophathic lymphadenopathy, pailosquamous eruption, persistent itch, claimed as rash on face, arms, stomach, and legs, to include as secondary to exposure to herbicide agents is denied. 




____________________________________________
SARAH RICHMOND
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs