Citation Nr: 1313632 
Decision Date: 04/24/13 Archive Date: 05/03/13

DOCKET NO. 10-33 571 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUES

1. Whether new and material evidence has been received to reopen service connection for a psychiatric disorder, claimed as anxiety and/or depression. 

2. Entitlement to service connection for a psychiatric disorder, claimed as anxiety and/or depression, to include as secondary to a service-connected disability. 

3. Entitlement to service connection for a left ankle disorder, to include as secondary to a service-connected disability. 

4. Entitlement to service connection for a left knee disorder, to include as secondary to a service-connected disability. 

5. Entitlement to service connection for a lumbosacral spine disorder, to include as secondary to a service-connected disability. 

6. Entitlement to a disability rating in excess of 20 percent for patellofemoral dysfunction of the right knee. 


REPRESENTATION

Appellant represented by: Kathy A. Lieberman, Attorney


ATTORNEY FOR THE BOARD

Thomas D. Jones, Counsel


INTRODUCTION

The Veteran, who is the appellant, served on active duty from June 1991 to June 1995. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from February 2009, July 2009, and March 2011 rating decisions of a Regional Office (RO) of the Department of Veterans Affairs (VA) in San Juan, the Commonwealth of Puerto Rico. 

On his June 2011 VA Form 9, the Veteran requested a hearing of unspecified type. In a February 2012 letter, however, the Veteran's representative withdrew the request for a hearing. 

The issues of entitlement to service connection for a psychiatric disorder and disorders of the left ankle, left knee, and lumbosacral spine are addressed in the REMAND portion of the decision below and are REMANDED to the RO.



FINDINGS OF FACT

1. In a July 1996 rating decision, the RO denied service connection for a mental condition, finding that the Veteran did not have a current disability because the diagnosed alcohol dependence was the result of willful misconduct. The Veteran did not file a timely appeal to this decision. 

2. Evidence received since the July 1996 rating decision contains evidence not previously considered that has some tendency to substantiate a current diagnosis of a psychiatric disorder. 

3. For the entire increased rating period, the Veteran's patellofemoral dysfunction of the right knee was manifested by pain, pain on use, no more than slight instability, painful motion, noncompensable limitation of knee flexion to no less than 60 degrees, and full extension. 


CONCLUSIONS OF LAW

1. The July 1996 rating decision that denied service connection for a mental condition became final. 38 U.S.C.A. § 7105 (West 2002); 38 C.F.R. § 20.1103 (2012). 

2. Evidence received since the July 1996 rating decision is new and material to reopen service connection for a psychiatric disorder. 38 U.S.C.A. § 5108 (West 2002); 38 C.F.R. § 3.156 (2012). 

3. The criteria for a disability rating in excess of 20 percent for patellofemoral dysfunction of the right knee are not met or more nearly approximated for the entire increased rating period. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107(b); 38 C.F.R. §§ 3.102, 3.159, 3.321(b)(1), 4.1, 4.3, 4.7, 4.10, 4.14, 4.40, 4.45, 4.59, 4.71, 4.71a, Diagnostic Codes 5256-63 (2012).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duty to notify and assist claimants in substantiating a claim for VA benefits, as codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.102, 3.159, 3.326(a) (2012). A VCAA notice consistent with 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) must (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. VCAA notice requirements apply to all five elements of a service connection claim (1) veteran status; (2) existence of disability; (3) connection between service and the disability; (4) degree of disability; and (5) effective date of benefits where a claim is granted. Dingess v. Nicholson, 
19 Vet. App. 473, 484 (2006). 

The Board finds that in this case VA has satisfied its duties to notify under the VCAA. In December 2008, April 2009, and September 2010 letters, the Veteran was notified of the information and evidence needed to substantiate and complete the claims on appeal. Additionally, these letters provided him with the general criteria for the assignment of an effective date and initial rating. Id. The initial notice was issued prior to the adverse determination on appeal; thus, no timing issue exists with regard to the notice provided the claimant. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

In Kent v. Nicholson, 20 Vet. App. 1, 11-12 (2006), the U.S. Court of Appeals for Veterans Claims (Court) held that, in the context of claims to reopen, VCAA notice (1) must notify a claimant of the evidence and information that is necessary to reopen the claim and (2) must notify the claimant of the evidence and information that is necessary to establish entitlement to the underlying benefit sought by the claimant. The Court elaborated that, in response to an application to reopen, VA is required to look at the bases for the denial in the prior decision and send a notice letter that describes what evidence would be necessary to substantiate that element or elements required to establish service connection that were found insufficient in the previous denial. Review of the record in the present case does not indicate the Veteran was afforded full notice of the basis of the RO's prior denial of service connection for a mental condition; however, because of the Board's favorable action regarding the reopening of this issue for consideration on the merits, the Board finds no prejudice to the Veteran in consideration of this issue at this time. See Shinseki v. Sanders, 129 U.S. 1696 (2009). 

The Board further finds that VA has complied with the duty to assist by aiding the Veteran in obtaining evidence. It appears that all known and available records relevant to the pending appeal have been obtained and are associated with the Veteran's claims files. The RO has obtained the Veteran's service treatment records, as well as VA and non-VA medical treatment records. The Veteran was also afforded VA medical examinations of his right knee in February and May 2009. Additionally, his VA clinical records contain pertinent medical findings. The Board notes that the VA medical evidence contains sufficiently specific clinical findings and informed discussion of the pertinent history and clinical features of the disability on appeal and is adequate for purposes of this appeal. The Board is not aware of, and the Veteran has not suggested the existence of, any additional pertinent evidence not yet received. 

Reopening of Service Connection for a Psychiatric Disorder

In the current claim on appeal, the Veteran seeks to reopen service connection for a psychiatric disorder. Presently, he claims a current psychiatric disorder which has been caused or aggravated by a service-connected disability. In a July 1996 rating decision, service connection for a mental condition was denied. The RO found that, although the Veteran had a current post-service diagnosis of alcohol dependence, this was not a disorder for which service connection could be awarded, and the evidence did not otherwise reflect a current diagnosis of a mental disorder. The Veteran did not initiate an appeal of this determination, and it became final. 38 U.S.C.A. § 7105; 38 C.F.R. § 20.1103. 

As an initial matter, the Board finds that 38 U.S.C.A. § 5108 is applicable to the present case because the July 1996 rating decision denied service connection for a "mental condition," and not a specific diagnosis of a psychiatric disorder. Thus, the present case is distinguishable from Boggs v. Peake, 520 F.3d 1330 (Fed. Cir. 2008), in which the U.S. Court of Appeals for the Federal Circuit held that claims based on separate and distinct diagnoses were separate and distinct claims. Boggs, 530 F.3d at 1336. In the present case, the Veteran's previously-denied claim for a mental condition was broad enough to encompass the current claim for an unspecified psychiatric disorder which results in anxiety attacks and requires the use of anti-depressants; thus, the reopening requirement of 38 U.S.C.A. § 5108 applies. 

Generally, a claim which has been denied in a final unappealed rating decision, or a rating decision that was appealed but was not perfected, may not thereafter be reopened and allowed. 38 U.S.C.A. § 7105(c),(d)(3); 38 C.F.R. § 20.1103. An exception to this rule is 38 U.S.C.A. § 5108, which provides that if new and material evidence is presented or secured with respect to a claim which has been disallowed, VA shall reopen the claim and review the former disposition of the claim. 

New evidence is defined as existing evidence not previously submitted to agency decisionmakers. Material evidence means evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence previously of record, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a).

In determining whether evidence is new and material, the credibility of the evidence is generally presumed. Justus v. Principi, 3 Vet. App. 510, 512-513 (1992). The United States Court of Appeals for the Federal Circuit (Federal Circuit) has held, however, that evidence that is merely cumulative of other evidence in the record cannot be new and material even if that evidence had not been previously presented. Anglin v. West, 203 F.3d 1343, 1347 (2000). 

In deciding whether new and material evidence has been received, the Board looks to the evidence submitted since the last final denial of the claim on any basis. Evans v. Brown, 9 Vet. App. 273, 285 (1996). The threshold for determining whether new and material evidence raises a reasonable possibility of substantiating a claim is "low." Shade v. Shinseki, 24 Vet. App. 110, 117 (2010). 

Regardless of whether the RO determined new and material evidence had been submitted, the Board must address the issue of the receipt of new and material evidence in the first instance because it determines the Board's jurisdiction to reach the underlying claims and to adjudicate the claims de novo. See Woehlaert v. Nicholson, 21 Vet. App. 456, 460-61 (2007) (citing Barnett v. Brown, 83 F.3d 1380, 1383 (Fed. Cir. 1996), aff'g, 8 Vet. App. 1 (1995)). If the Board finds that no such evidence has been offered, that is where the analysis must end, and what the RO may have determined in this regard is irrelevant. Barnett, 83 F.3d at 1383. Further analysis, beyond the evaluation of whether the evidence submitted in the effort to reopen is new and material, is neither required nor permitted. Id. at 1384. Any finding entered when new and material evidence has not been submitted "is a legal nullity." Butler v. Brown, 9 Vet. App. 167, 171 (1996) (applying an identical analysis to claims previously and finally denied, whether by the Board or the RO). See Jackson v. Principi, 265 F.3d 1366, 1369 (2001) (the statutes make clear that the Board has a jurisdictional responsibility to consider whether it was proper for a claim to be reopened, regardless of whether the previous action denying the claim was appealed to the Board). 

In the July 1996 rating decision, the RO determined that a psychiatric disorder for which service connection could be awarded was not shown on service separation or within the post-service record. The evidence considered at that time included service treatment records as well as a post-service October 1995 VA examination report. The Veteran did not initiate an appeal of this determination, and it became final. 

Since the prior denial of the claim in July 1996, recent evidentiary submissions have included additional VA medical treatment records, as well as the Veteran's own written and oral contentions. Specifically, VA medical treatment records were received, which include a February 2011 VA psychiatric examination. This examination report reflects a diagnosis of bipolar disorder, along with alcohol dependence. Also received were an October 2010 letter from a private psychiatrist, A.G.D., M.D., and a June 2011 letter from Dr. N.A.O, M.D. Dr. D. diagnosed bipolar disorder, mixed, and opined that the Veteran's "limitations and severe pain have worsened his emotional condition, unstable at this moment." The Board notes that the Veteran was been granted service connection for patellofemoral dysfunction of the right knee and degenerative joint disease of the right ankle. In the June 2011 letter, Dr. O. diagnosed anxiety and depression, and opined that these disabilities were likely "service-connected due to his chronic pain and limitation of activities." 

Having reviewed the recent evidentiary submissions, the Board finds that new and material evidence to reopen service connection for a psychiatric disorder has been received. The October 2010 and June 2011 letters and February 2011 VA examination report confirmed current diagnoses of various psychiatric disorders, anxiety, depression, and bipolar disorder; these are all psychiatric disorders for which service connection may be granted. Hence, these documents are new, in that they were not of record at the time of the prior final denial. They are also not cumulative and redundant of evidence already of record, and are material, as the private physicians' letters and the VA examination report confirm a current diagnosis of a psychiatric disorder, which was one basis of the prior final denial of service connection for a mental condition. 

Additionally, the October 2010 and June 2011 letters suggests a current psychiatric disorder is related to his various physical disabilities, to include his service-connected right knee and/or ankle disorders. This evidence is also material because it relates to the unestablished fact of a nexus or relationship of a current disability to a service-connected disability that is necessary to substantiate the claim. See 38 C.F.R. § 3.310 (stating that service connection may be awarded for any disability which is proximately due to or the result of, or is otherwise aggravated by, a service-connected disease or injury). Specifically, this evidence addresses the basis for the prior denial by confirming a current diagnosis and a nexus with a service-connected disability. The Court has held that 38 C.F.R. § 3.156(a) "must be read as creating a low threshold" which "suggests a standard that would require reopening if newly submitted evidence, combined with VA assistance and considering the other evidence of record, raises a reasonable possibility of substantiating the claim." Shade, 24 Vet. App. at 117-18 (2010). 

Given this standard, the Board finds that the additional evidence received is new and material within the meaning of 38 C.F.R. § 3.156, warranting reopening of service connection for a psychiatric disorder. At the time of the 1996 denial, VA had no competent evidence establishing a current diagnosis of a psychiatric disorder for which service connection may be awarded. The more recent medical evidence, confirming a current diagnosis of bipolar disorder, addresses this prior deficit in the record, as well as indicating a nexus with a service-connected disability. For these reasons, the Board finds that the additional evidence received since the July 1996 decision is new and material to reopen service connection for a psychiatric disorder. 38 C.F.R. § 3.156(a). (The reopened claim is addressed below) 

Increased Rating for a Right Knee Disability

Service connection was initially granted for patellofemoral dysfunction of the right knee, without instability, but with limitation of motion. The rating assigned using Diagnostic Code 5257, in recognition of the other impairment caused by the knee disability, notwithstanding no actual instability shown or rated at that time. The rating was subsequently made using Diagnostic Code 5262, which resulted in a more favorable rating of 20 percent from December 2008. See 38 C.F.R. §§ 4.1 (2012) (stating that over a period of many years a disability claim may require rerating in accordance with changes in laws, medical knowledge, and the disability); see also 38 C.F.R. §§ 4.13, 4.27 (2012) (recognizing the need for careful use of diagnostic codes and change of diagnostic codes based on changes in diagnosis). 

In December 2008, the Veteran filed a claim for increased disability rating for the service-connected right knee disability, asserting that the right knee disability has worsened in recent years, resulting in limitation of motion, pain, and pain on use. He has stated that his pain and other symptoms limit his mobility and such other activities as running. 

Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155; 
38 C.F.R. Part 4. In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of a veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). Where, however, an increase in the level of a service-connected disability is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet. App. 55 (1994). In cases in which a reasonable doubt arises as to the appropriate degree of disability to be assigned, such doubt shall be resolved in favor of the veteran. 38 C.F.R. § 4.3. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. 38 C.F.R. § 4.7. Finally, staged ratings may be appropriate for increased rating claims when the factual findings show distinct time periods where the service-connected disability at issue exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007). 

The Veteran has also been awarded, during the pendency of this appeal, a temporary total rating for convalescence purposes pursuant to 38 C.F.R. § 4.30 following a February 2009 surgery of the right knee. This award was made effective from February 5, 2009 to April 31, 2009. As the Veteran has not disputed the length of this award, that issue is not before the Board. 

When evaluating musculoskeletal disabilities, the Board must also consider whether a higher disability evaluation is warranted on the basis of functional loss due to pain or due to weakness, fatigability, incoordination, or pain on movement of a joint under 38 C.F.R. §§ 4.40 and 4.45 under any applicable diagnostic code pertaining to limitation of motion. See DeLuca v. Brown, 8 Vet. App. 202 (1995). Where, however, a musculoskeletal disability is evaluated at the highest rating available based upon limitation of motion, further DeLuca analysis is foreclosed. Johnston v. Brown, 10 Vet. App. 80 (1997). 

The Veteran was originally granted service connection under Diagnostic Code 5257, for other impairment of the knee that includes the patellofemoral dysfunction, as the evidence at that time did not actually show recurrent subluxation or lateral instability. Diagnostic Code 5257 provides a 10 percent rating for slight knee impairment, a 20 percent rating for moderate impairment, and a 30 percent rating for severe impairment. 38 C.F.R. § 4.71a. 

More recently, the Veteran's right knee disability has been evaluated pursuant to Diagnostic Code 5262, based on impairment of the tibia and fibula. Diagnostic Code 5262 provides a 10 percent rating for malunion of the tibia and fibula resulting in slight knee or ankle disability, a 20 percent rating for moderate knee and ankle disability, and a 30 percent rating for marked knee or ankle disability. Nonunion of the tibia and fibula, with loose motion requiring a brace, warrants a 40 percent rating. 38 C.F.R. § 4.71a. 

The Board must also consider other applicable diagnostic criteria for knee disabilities. Limitation of motion of the knee is evaluated under Diagnostic Codes 5260 and 5261. Under Diagnostic Code 5260, a noncompensable rating is assigned for limitation of flexion to 60 degrees, a 10 percent rating is assigned for flexion limited to 45 degrees, a 20 percent rating is assigned for flexion limited to 30 degrees, and a 30 percent rating is assigned for flexion limited to 15 degrees. Pursuant to Diagnostic Code 5261, a noncompensable rating is assigned for limitation of extension to 5 degrees, a 10 percent rating will be assigned for extension of the knee limited to 10 degrees, a 20 percent rating is assigned for extension limited to 15 degrees, a 30 percent rating for limitation to 20 degrees, and a 40 percent rating for limitation to 30 degrees. 38 C.F.R. § 4.71a, Diagnostic Codes 5260, 5261.

Compensable evaluations may also be granted for dislocation or removal of the semilunar cartilage of the knee joint. Semilunar cartilage is defined as either of the crescent-shaped wedges of fibrocartilage found in the knee. The meniscus is a crescent-shaped wedge of fibrocartilage. See DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 28th ed., 1012, 1504. Symptomatic removal of the cartilage warrants a 10 percent rating. 38 C.F.R. § 4.71a, Diagnostic Code 5259. Dislocation of the cartilage with frequent episodes of "locking", pain, and effusion warrants a 20 percent evaluation. 38 C.F.R. § 4.71a, Diagnostic Code 5258. 

The Board is also cognizant of VAOPGCPREC 23-97, which interprets that in certain cases where a veteran has both limitation of motion and instability of the affected knee joint, a separate compensable rating may be assigned without violating 38 C.F.R. § 4.14, the regulation against pyramiding. The Board next notes that on September 17, 2004, the VA General Counsel issued VAOPGCPREC 9-2004, which interpreted that a veteran can receive separate ratings under Diagnostic Code 5260 (limitation of flexion) and Diagnostic Code 5261 (limitation of extension) for disability of the same joint. 

The Veteran was afforded a VA orthopedic examination in January 2009, at which he reported pain and limitation of motion of the right knee, that medications and ointments provided mild relief from his symptoms, that his right knee pain was usually 6/10 in severity, but he also experienced pain of 9/10 during flare-ups, and that these episodes occurred at least twice per month following prolonged standing or ambulation and lasted several hours. The Veteran denied any recent surgeries of the right knee, and did not require a brace, cane, or other assistance device for ambulation. Dislocation and subluxation of the right knee and constitutional symptoms resulting from inflammatory arthritis were also denied. 

On objective examination in January 2009, the Veteran was unable to squat due to reported knee pain. His gait was antalgic, with a limp favoring the right leg. His right knee exhibited no instability or effusion, but crepitus was present. The Veteran's pain of the peripatellar area of the right knee was described as exquisite on palpation. Neither ankylosis nor a leg length discrepancy were present. Range of motion testing indicated flexion to 110 degrees, with pain beginning at 100 degrees, and extension to 0 degrees, without pain. The examiner found an approximately 30 degrees functional loss of flexion secondary to pain. The medial and lateral collateral ligaments and anterior and posterior cruciate ligaments were all without instability at the neutral position and at 30 degrees. Lachman's and McMurray's tests were both negative. 

In February 2009, the Veteran had an injury to the patellar tendon of his right knee, and underwent outpatient surgery of the knee at a private facility. His surgery was without complications and he was discharged that same day to be followed on an outpatient basis. He underwent a course of physical therapy following his surgery. 

Another VA orthopedic examination was afforded the Veteran in May 2009. His current symptoms included pain, limitation of motion, and stiffness of the right knee. His reported pain was 7/10 in severity, and increased with use. During flare-ups, his pain was 9/10 in severity. The Veteran used medication for his pain, with mild relief. He also reported instability and giving way of his right knee. He used a cane and wore a knee brace to aid his mobility. One incident of dislocation or subluxation was noted in March 2009. He continued to be employed with the postal service. On objective evaluation, the Veteran had no swelling of the right knee, but tenderness was reported. His gait was antalgic, favoring his right leg. No ankylosis was present, but muscle strength was 4/5 in the right quadriceps. Leg length was equal bilaterally. On range of motion testing, flexion was to 90 degrees, with pain beginning at 60 degrees, and extension was to 0 degrees with pain reported. A functional loss of 40 degrees of flexion due to pain was reported by the examiner. The medial and lateral collateral ligaments were without instability, but instability was noted for the anterior and posterior cruciate ligaments. Lachman's and drawer tests were positive, but McMurray's test was negative. The final impression was of patellofemoral dysfunction and patella tendon rupture with residual anteroposterior instability of the right knee. 

VA medical treatment records also reflect physical examination of the Veteran's right knee. In April 2011, he was again seen for reports of bilateral knee pain, right worse than left, with increased pain with use. Aside from his pain, he denied any locking of the right knee or other impairment of mobility. On physical evaluation, he was without swelling, atrophy, or asymmetry of the lower extremities. Tenderness was present on palpation of the right knee joint. Lachman's and posterior drawer's tests were negative bilaterally. Range of motion was described as full, with pain reported at the extremes of motion. Muscle strength was 4/5 for the right quadriceps. No neurological impairment was noted, and reflexes were 2+ in the right leg. X-rays of the right knee confirmed a large effusion on the right, with superolateral patellar subluxation and suprapatellar calcific tendinosis. Tibial tubercle subcentimeter osteolytic bone lesions, possibly post-surgical in nature, were also observed on the right. Physical therapy was recommended. 

A May 2011 physical therapy evaluation noted the Veteran's complaints of ongoing right knee pain, especially with use. His pain ranged from 6-8/10. He also reported a feeling of giving way in the right knee. Range of motion testing indicated flexion to 120 degrees and extension to -15 degrees. Muscle strength was 5/5 in the right hamstring and 4/5 in the right quadriceps. Anterior and posterior drawer's tests were negative. The right knee was tender to palpation. 

After reviewing the totality of the record, the Board finds the preponderance of the evidence to be against a disability rating in excess of 20 percent for the Veteran's service-connected right knee disability under all potentially applicable rating criteria. Considering first Diagnostic Code 5262, the Board finds an increased rating, for marked knee or ankle disability, is not warranted. As discussed above, the Veteran's primary symptomatology is pain and some instability of the right knee joint. He has, however, also demonstrated minimal loss of strength or stability of the right knee, and remains able to ambulate on the right knee, albeit with the use of a cane and knee brace. He is also without neurological impairment of the right leg, and while X-rays of the right knee are positive for degenerative joint disease and osteophytes, they do not indicate any malunion or nonunion of tibia or fibula at the right knee. Thus, the Board finds the preponderance of the evidence is against a finding of marked right knee or ankle impairment, such that a higher 30 percent evaluation under Diagnostic Code 5262 is warranted. 38 C.F.R. § 4.71a. 

An increased rating under other applicable criteria must also be considered by VA. Regarding Diagnostic Codes 5260-61, for limitation of motion of the knee joint, while the Veteran has reported painful motion, his flexion was limited to no less than 60 degrees and extension to 0 degrees during the pendency of this appeal. Additionally, while he has claimed additional limitation of motion due in part to painful motion, the Veteran's functional impairment in range of motion terms results only in flexion limited to, at worst, 60 degrees. Thus, neither the flexion nor extension displayed by the Veteran warrant the award of a disability rating in excess of the 20 percent currently awarded. See DeLuca, 8 Vet. App. at 202. 

The Board also finds that a disability rating in excess of 20 percent is not warranted under Diagnostic Code 5257, for other impairment of the knee, which is rated based on criteria of severity of lateral instability or recurrent subluxation. The Veteran has reported instability of the right knee, and that he uses a knee brace. The Board acknowledges that the Veteran, despite being a layperson, is competent to describe his observable symptomatology, such as knee pain and instability. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 
451 F.3d 1331 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). These lay assertions are also deemed credible by the Board. The Board finds that the evidence of record weighs against a finding of severe right knee impairment, as rated based on lateral instability or recurrent subluxation, that would support a 30 percent disability rating. As noted above, the Veteran's medial and lateral collateral ligaments have been described by medical examiners as stable on several occasions, and instability of the posterior and lateral collateral ligaments was only noted in May 2009, but not in February 2009. Subsequent knee joint stability tests in 2011 were negative. Thus, the Board finds that no more than slight instability of the right knee has been demonstrated; such a finding does not support an alternative an increased rating in excess of 20 percent under this code. 

The Board has also considered whether separate disability ratings under Diagnostic Codes 5257 and 5262 are available, but finds that separate ratings would involve prohibited pyramiding. Both Diagnostic Codes 5257 and 5262 encompass non-specific "knee impairment" so that separate awards under these codes would amount to pyramiding, that is, rating some of the same symptoms of the generalized knee impairment under different diagnostic codes, which is forbidden by regulation. 38 C.F.R. § 4.14 (the evaluation of the same disability or the same manifestations of disability under multiple diagnoses is to be avoided); Esteban v. Brown, 6 Vet. App. 259, 261 (1994) (holding that a separate rating may be granted only for a "distinct and separate" disability; none of the symptomatology may be overlapping); Brady v. Brown, 4 Vet. App. 203, 206 (1993) (stating that a claimant may not be compensated twice for the same symptomatology as "such a result would over compensate the claimant for the actual impairment of his earning capacity"). 

Moreover, VAOPGCPREC 23-97 and 9-2004 do not provide for separate disability ratings under Codes 5257 and 5262, but only pertained to the specific disabilities of arthritis (which is based only on limitation of motion, including due to limitations caused by pain) and instability (which did not include rating based on limitation of motion or on painful motion). Both Diagnostic Code 5257 and 5262 are broader rating codes that are more general so as to have overlapping criteria, and are broad enough to provide for ratings based on patellofemoral dysfunction, either as "other impairment of the knee" with the severity of the patellofemoral dysfunction contemplated in the rating criteria (Diagnostic Code 5257) or as "knee disability" involving "impairment of" the "tibia and fibula" with the severity of the patellofemoral dysfunction contemplated in the rating criteria (Diagnostic Code 5262). See also Amberman v. Shinseki, 570 F.3d 1377, 1381 (Fed. Cir. 2009) ("two defined diagnoses constitute the same disability for purposes of section 4.14 if they have overlapping symptomatology"). 

Next, the Board finds the competent evidence of record does not indicate the presence of ankylosis, impairment of the tibia or fibula, or genu recurvatum of the left knee; therefore, award of an increased or separate rating under the relevant diagnostic codes for these disabilities is not warranted. See 38 C.F.R. § 4.71a, Diagnostic Codes 5256, 5262-63. Additionally, the VA examination reports have been negative for any physical findings of effusion or locking of the left knee due to dislocation of the semilunar cartilage of the knee; therefore, an increased or separate rating under Diagnostic Code 5258 is not warranted. See 38 C.F.R. § 4.71a. 

The Board has considered whether referral for an extraschedular evaluation is warranted. Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. To accord justice in an exceptional case where the schedular standards are found to be inadequate, the RO is authorized to refer the case to the Chief Benefits Director or the Director, Compensation and Pension Service for assignment of an extraschedular evaluation commensurate with the average earning capacity impairment. The criterion for such an award is a finding that the case presents an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical application of regular schedular standards. 38 C.F.R. § 3.321(b)(1). 

In Thun v. Peake, 22 Vet. App. 111, 115 (2008), the Court clarified the analytical steps necessary to determine whether referral for extraschedular consideration is warranted. Either the RO or the Board must first determine whether the schedular rating criteria reasonably describe the Veteran's disability level and symptomatology. If the schedular rating criteria reasonably describe a veteran's disability level and symptomatology, the assigned schedular evaluation is adequate, referral for extraschedular consideration is not required, and the analysis stops.

If the RO or the Board finds that the schedular evaluation does not contemplate a veteran's level of disability and symptomatology, then either the RO or the Board must determine whether the veteran's exceptional disability picture includes other related factors such as marked interference with employment and frequent periods of hospitalization. Id. at 116. If this is the case, then the RO or the Board must refer the matter to the VA Under Secretary for Benefits or the Director of the Compensation and Pension Service for the third step of the analysis, determining whether justice requires assignment of an extraschedular rating. Id.

Turning to the first step of the extraschedular analysis in the present case, the Board finds that the symptomatology and impairment caused by the Veteran's patellofemoral dysfunction of the right knee is specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. The schedular rating criteria for the knee specifically provide for a disability rating based on the level of impairment of the knee joint, to include such symptoms as instability, limitation of motion, and functional loss. In this case, considering the lay and medical evidence, the Veteran's patellofemoral dysfunction of the right knee is manifested by pain and no more than slight instability and limitation of motion. These symptoms are part of or like or similar to symptoms listed under the schedular rating criteria at 38 C.F.R. § 4.71a. For this reason, the Board finds that the schedular rating criteria are adequate to rate the Veteran's right knee disability, and referral for consideration of an extraschedular evaluation is not warranted. 

In conclusion, a disability rating in excess of 20 percent is not warranted. As a preponderance of the evidence is against the award of a disability rating in excess of 20 percent, the benefit of the doubt doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 4.3, 4.7; Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1991). 


ORDER

New and material evidence having been received, the appeal to reopen service connection for a psychiatric disorder is granted. 

A disability rating in excess of 20 percent for patellofemoral dysfunction of the right knee is denied. 


REMAND

Service Connection for a Psychiatric Disorder

The Veteran's service connection claim for a psychiatric disorder having been reopened, it may now be considered on the merits. As noted above, the Veteran was afforded a February 2011 VA examination which confirmed a current diagnosis of bipolar disorder, as well as alcohol dependence. The examiner further opined that these disorders were "separate and distinct entities with no relation to each other." Regarding the etiology of the Veteran's current psychiatric disorders, the examiner opined that the Veteran's "depression and anxiety [are] not caused by or a result of the Veteran's service-connected right knee condition." 

The Board finds several flaws with this examination and opinion statement. First, the examiner diagnosed the Veteran with a bipolar disorder, but then found his "depression and anxiety" were unrelated to his service-connected right knee disorder. No opinion was given regarding whether "depression and anxiety" were separate diagnoses, or merely manifestations of the Veteran's bipolar disorder. Next, the examiner did not address whether the Veteran's service-connected right knee disorder, and the symptoms thereof, aggravated a current psychiatric disorder. See 38 C.F.R. § 3.310. Finally, the opinion does not consider the October 2010 letter from Dr. A.G.D., who has treated the Veteran since 2009 and opined that his right knee disorder aggravated his bipolar disorder. Additionally, the February 2011 VA examiner could not have considered the June 2011 letter from Dr. O., as the former predates the latter. Once VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Therefore, remand is required to afford the Veteran a complete VA medical examination and opinion. 

Next, the Board observes that in the October 2010 letter, Dr. A.G.D. reported treatment of the Veteran since 2009 for a psychiatric disorder. Review of the record does not indicate that Dr. D.'s clinical records have been obtained. VA is obligated to make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103A. VA's duty to assist includes obtaining relevant VA and private medical records when the existence and location of such records has been made known to VA. 38 U.S.C.A. § 5103A(b). Therefore, remand is required in order for this pertinent medical evidence to be obtained. 

Service Connection for Left Knee, Ankle, and 
Lumbosacral Spine Disorders

The Veteran seeks service connection for left knee, ankle, and lumbosacral spine disorders, all claimed as secondary to his service-connected disabilities. The Veteran has been granted service connection for disabilities of the right ankle and right knee. Service connection may be awarded for any disability which is proximately due to or the result of, or is otherwise aggravated by, a service-connected disease or injury. 38 C.F.R. § 3.310. 

The Veteran was afforded a January 2009 VA examination to determine the presence and etiology of any current disorder of the left knee. The examiner physically examined the Veteran but was not provided the claims file for review. Upon clinical evaluation of the Veteran, a diagnosis of patellofemoral dysfunction of the left knee was made. Regarding the etiology of this disorder, the examiner opined that the Veteran's left knee disorder was not related to his service-connected disabilities of the right knee and right ankle, as his "gait biomechanics has not affected [the] left knee's function at all." The Veteran did not display any instability of either the right knee or ankle, as would cause any derangement in left knee function. 

Also in January 2009, the Veteran underwent a VA examination to determine the presence and etiology of any current low back disorder. The examiner physically examined the Veteran but was not provided the claims file for review. After clinically evaluating the Veteran, the examiner diagnosed a lumbar strain. The examiner also opined that this lumbar strain was not related "in terms of pathophysiology or biomechanics" to his service-connected disabilities of the right knee and ankle. 

In December 2010, the Veteran was afforded a VA examination to determine the presence and etiology of any current disorder of the left ankle. Review of the claims file and clinical examination of the Veteran yielded diagnoses of tendonitis/synovitis of the left ankle. Regarding the etiology of these diagnoses, the examiner opined it was less likely as not that these were either caused or aggravated by the Veteran's service-connected right knee disorder, as "there is no information in the medical literature to firmly support" such a relationship. The examiner did not, however, indicate whether the Veteran's degenerative joint disease of the right ankle, for which service connection has also been awarded, either caused or aggravated a current left ankle disorder. 

In support of his claim, the Veteran submitted a June 2011 letter from N.A.O., M.D., a private physician. Dr. O. described in her letter her evaluation of the Veteran. She noted his service-connected disabilities of the right knee and right ankle, and stated these caused the Veteran substantial pain. Due to his pain, the Veteran "put a lot of stress on his left knee and ankle" resulting in "bad posture, loss of correct alignment, and loss of curvature" of the spine. Based on these findings, Dr. O. opined that it was likely the Veteran's service-connected disability of the right knee caused his current problems of the left knee, ankle, and back. 

While the Veteran was afforded the aforementioned January 2009 and December 2010 VA examinations regarding his claimed disabilities, these examinations were conducted prior to receipt of the June 2011 private examination report from Dr. O.; thus, no VA examiner was able to comment upon it. Additionally, the claims file was not made available to the VA examiner at the time of both January 2009 examinations. While a failure to review the Veteran's claims file, to include his full medical history, is not inherently fatal to a medical opinion statement, it is a relevant factor in the weighing of that medical opinion. See Prejean v. West, 
13 Vet. App. 444, 448-49 (2000). Once VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr, 21 Vet. App. at 312. Therefore, remand is required to afford the Veteran a complete VA medical examination and opinion regarding his disorders of the left knee, left ankle, and lumbosacral spine. 

Finally, the Board notes that the Veteran has received VA medical treatment during the pendency of this appeal, and may continue to receive the same. Thus, any more recent VA treatment records should be requested and associated with the claims file. 

Accordingly, the issues of service connection for a psychiatric disorder and disorders of the left ankle, left knee, and lumbosacral spine are REMANDED for the following action:

1. Contact the Veteran and request that he identify specific names, addresses, and approximate dates of treatment for all health care providers who provided treatment for a psychiatric disorder, to include but not be limited to the Dr. Andrea Gonzalez Duenas, and provide release for these records. The RO should attempt to obtain any properly identified records. Any negative reply should be documented for the record. In the alternative, the Veteran may obtain such records and submit them. 

2. Obtain any VA treatment records not already obtained from the VA medical center in San Juan, Puerto Rico, or any other VA facility from which the Veteran has received VA medical care. If no such records are available, that fact must be noted for the record. 

3. The AMC/RO should schedule the Veteran for a VA mental disorders examination for the purpose of assisting in determining the nature and etiology of any current psychiatric disorder. Following a review of all relevant evidence from the claims file, an interview with the Veteran to obtain a complete medical history, and an examination and any necessary testing, the examiner is asked to offer the following opinions: 
 a) Based upon review of the record and personal evaluation of the Veteran, what current psychiatric disorders (diagnoses) does the Veteran have? 
 b) Is it at least as likely as not (50 percent or greater degree of probability) that any current psychiatric disorder is caused by a service-connected disability or disabilities? 
 c) Is it at least as likely as not (50 percent or greater degree of probability) that any current psychiatric disorder is aggravated by (permanently worsened in severity beyond the natural progression of the disorder) a service-connected disability or disabilities? 

In answering these questions, the examiner should note and discuss the following:
 The service-connected disabilities are patellofemoral dysfunction of the right knee and degenerative joint disease of the right ankle. 
 The examiner should also address what role any alcohol dependence plays in the development and/or aggravation of any current psychiatric disorder.
 A rationale should be provided for any opinion or conclusion expressed. This rationale should address any relevant medical opinions of record, to include the October 2010 letter from A.G.D., M.D., and the June 2011 letter from Dr. N.A.O., M.D. If the examiner cannot respond without resorting to speculation, he or she should explain why a response would be speculative. 

4. The AMC/RO should schedule the Veteran for a VA joints disorders (orthopedic) examination for the purpose of assisting in determining the nature and etiology of any current disorders of the left knee, left ankle, and lumbosacral spine. Following a review of all relevant evidence from the claims file, an interview with the Veteran to obtain a complete medical history, and an examination and any necessary testing, the examiner is asked to offer the following opinions: 
 a) Based upon review of the record and personal evaluation of the Veteran, what current disabilities (diagnoses) of the left knee, left ankle, and lumbosacral spine does the Veteran have? 
 
 b) Is it at least as likely as not (50 percent or greater degree of probability) that any current disorders of the left knee, left ankle, or lumbosacral spine are caused by a service-connected disability or disabilities? 
 c) Is it at least as likely as not (50 percent or greater degree of probability) that any current disorders of the left knee, left ankle, and lumbosacral spine are aggravated (permanently increased in severity beyond the natural progression of the disorder) by a service-connected disability or disabilities? 
 
In answering these questions, the examiner should note and discuss the following:
 The service-connected disabilities are patellofemoral dysfunction of the right knee and degenerative joint disease of the right ankle. 
 The examiner should also address what role any alcohol dependence plays in the development and/or aggravation of any current psychiatric disorder.
 A rationale should be provided for any opinion or conclusion expressed. This rationale should address any relevant medical opinions of record, to include the June 2011 letter from Dr. N.A.O., M.D. If the examiner cannot respond without resorting to speculation, he or she should explain why a response would be speculative. 

5. After undertaking any additional development deemed appropriate, and giving the Veteran the full opportunity to supplement the record, readjudicate the claims for service connection for a psychiatric disorder and disorders of the left knee, left ankle, and lumbosacral spine in light of any additional evidence added to the record. Such reconsideration should include the theory of entitlement to service connection as secondary to a service-connected disability. If any benefit sought on appeal remains denied, the Veteran and his representative should be furnished with a supplemental statement of the case, and should be afforded the applicable opportunity to respond before the record is returned to the Board for further review. 

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). The Veteran is advised to appear and participate in any scheduled VA examination(s), as failure to do so may result in denial of the claim(s). See 38 C.F.R. § 3.655 (2012).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2012). 



______________________________________________
J. Parker
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs